LEE PRATT, ADMINISTRATOR, APPELLEE, v. WESTERN BRIDGE & CONSTRUCTION COMPANY, APPELLANT.

FILED MARCH 7, 1928. No. 25445.

554

*Dressler & Neely,* for appellant.

*Helm & Lewis, M. F. Harrington* and *Gerald F. Harrington, contra.*

Heard before Goss, C. J., Rose, Good, Thompson, Eberly and Howell, JJ.

Howell, J.

Lee Pratt, as administrator, sued the Western Bridge & Construction Company on behalf of himself and wife for damages for wrongful death of Rodney J. Pratt, their three and one-half year old son. The company appeals from an adverse judgment of $5,289. Several errors are assigned, but only those considered important will be noticed.

1. It is contended the verdict is not sustained by the evidence. The negligence charged is: On February 8, 1923, the boy and his father and mother were riding in an automobile at night, on a state highway near Gordon, Nebraska, and ran into a hole at the side of the road as he approached a culvert which had been completed except as to concrete wings. The concrete work had been abandoned in the fall of 1922, to be resumed in the spring of 1923. The roadway, other than the culvert, was 24 feet wide and had been completed, and, by reason of excavations at each end of the culvert, the roadway was narrowed at that place to about 12 feet.

The facts found by the jury were that the automobile lights afforded visibility for 300 feet ahead. As the automobile approached the culvert the driver saw a woman walking east on the right side of the road, and, in order to pass her, the automobile was steered toward the left side of the road and, as it was turning back to its proper place, its wheels dropped into the hole on the left side of the narrowed roadbed, throwing the boy out, resulting in his death. The appellant had a contract with the county

to put in culverts where needed on the newly graded road. The road was open for travel. The hole into which the automobile dropped was so filled with tumble weeds that lights of the automobile would not reveal the true condition, and the automobile was traveling at a moderate speed. While the evidence is conflicting and will not be detailed, we think it sufficient to go to the jury on negligence and contributory negligence.

2. Another complaint is the giving of instruction No. 4 on the court's own motion. We think it is clearly erroneous, because it stated an erroneous rule on comparative negligence, and assumed appellant guilty of "gross negligence." It assumes gross negligence, *i. e.,* it told the jury, should it find. there was negligence on the part of the parents of the boy, and "such negligence of the deceased's parents was slight in comparison with *the gross negligence* of the defendant, then you will find for the plaintiff." No other comparison was allowed. It is claimed the error, if any, was cured by another instruction which told the jury "that the burden of proof is upon the plaintiff to establish by a preponderance of evidence all of the material allegations of his petition, and plaintiff must satisfy you by a preponderance of the evidence that the defendant was guilty of negligence as alleged in his petition, and that such negligence was the direct and proximate cause of the accident, and that on account thereof plaintiff has sustained damages as a result thereof, and, unless you find that plaintiff has established each of the above propositions by a preponderance of the evidence, your verdict should be for the defendant. On the other hand, if the plaintiff has satisfied you that all of the above propositions have been sustained by a preponderance of the evidence, then your verdict should be for the plaintiff."

· No other instruction touched the question of comparative negligence. Since the case of *Morrison v. Scotts Bluff County,* 104 Neb. 254, decided by this court in 1920, there is scarcely any excuse for attempting to define the rule pertaining to comparative negligence otherwise than is there-

in stated. The statute defines it as one rule and not sever-
able. In the instant case the jury were told that, "if you
find that the parents were negligent," and "such negligence
of the deceased's parents was slight in comparison with the
gross negligence," etc. It was not said, if you find "gross
negligence" of defendant, etc. The rule laid down in the
*Morrison* case is that, if both parties are guilty of negli-
gence, plaintiff could recover if the "negligence of plaintiff
was slight and the negligence of defendants was gross in
comparison therewith." Such comparison does not assume
negligence of either, while in the instant case the compari-
son was required to be made with "the gross negligence of
the defendant."

3. Another assigned error is that the court erred in
refusing to give instruction No. 2 requested by defendant.
That instruction was erroneous in at least three particu-
lars: (a) It told the jury that the action was brought "by
the *father* for his *own* benefit;" (b) "if you find from the
evidence that the accident resulted from the negligence
of the *father*, * * * your verdict will be for the defendant,"
etc.; (c) and, "if the negligence of both *plaintiff* and de-
fendant is equally balanced, plaintiff cannot recover." If
the negligence of both plaintiff and defendant were equal,
without any negligence of the mother, a verdict against
the mother would not necessarily follow. The action was
for the benefit of both father and mother. If the defend-
ant was guilty of actionable negligence, and the mother of
none, her right to recover would not be cut off by an act
of another not imputable to her.

4. The next contention is that recovery by the plaintiff
is barred because of failure to sue within 30 days from
the date of the injury. This is based upon section 2746,
Comp. St. 1922, which denies the right of recovery against
a county for damages by "means of insufficiency, or want
of repairs of a highway or bridge, which the county or
*counties* are liable to keep in *repair*," unless "such action
is commenced within 30 days of the time of the injury."
At common law there was no liability on the part of the

county. Whatever the rule may be where an agent of the county acts in accordance with its express direction, or in *repairing* its roads for the county, or as an independent contractor doing construction work according to specific plans required by the county, the authorities cited by appellant are distinguishable under the facts before us. Had the instant suit been brought within 30 days, it would not have changed the rule of evidence. There is a distinction between a cause of action and the right to sue at a given time, or under certain conditions. The right to sue the county was a conditional grant of a new cause of action which did not exist at common law. It was not the intention of the statutes referred to, to strike down any cause of action that existed at common law. The appellant did not do its work under express plans or by any command of the county in digging and leaving dangerous holes in a road open to travel, as was done. Such were not even necessary incidents to immediate or connected work in the construction of the culvert. Appellant dug the hole and purposely left it for months as a menace to the traveling public. During that time it served no useful purpose in furthering the fulfilment of appellant's contract with the county, or in performance of any duty imposed by law upon the county. The act making the county liable, conditionally, for defects makes no reference to other than defects, etc., either expressly or by reasonable implication. The argument of some courts that to hold contractors liable for their acts in performing work for a county would tend to increase the cost to the public is not appealing, except in cases where the work is to be done in a specific way, or to construct a certain thing in manner prescribed by the county, or when the individual is its *alter ego*.

We now call attention to cases cited by appellant. *Schneider v. Cahill,* 127 S. W. (Ky.) 143, does not clearly set forth the relation of Cahill to the county, other than he was a "supervisor or contractor of the county *having charge of the construction* of the county roads." It appears that the opinion was "not to be officially reported."

It also appears that an unguarded ditch was left open, into which Schneider fell, *"while* appellee (Cahill) was *supervising* the construction." The court further states: "If a liability existed it would be the liability of the county, and not that of the supervisor." This court has held that a contractor is not liable in damages for negligence in constructing works for a county in conformity to plans directed by the county, but in *Frickel v. Lancaster County,* 115 Neb. 506, both the county and the contractor were sued for negligence in the manner of doing the work, and, while the judgment of the lower court was reversed, the case was "remanded for a new trial," as to all defendants.

*Nolan v. New York, N. H. & H. R. Co.,* 53 Conn. 461, was ruled by a statute which *created* a liability against railroads *charged by the statute* with a duty to "keep it in repair" (meaning roads and bridges), and which prohibited actions "unless written notice of such injury" be given thereof "within 60 days." The statute made it the duty of railroads to "keep in repair the surface of the streets adjoining the rails," for a certain space on each side. Prior to the statute no such duty existed. The court held that, as the duty was "founded upon a statutory liability," before an injured party could enforce its provisions, "he must perform his own duty" to give the notice required, before he could have the benefit of the new cause of action. It was loaded with a condition precedent. The rule is not only sound, but it is just. But for the statute, the railroad company would not have been liable at all.

To the same effect is *Mahoney v. Natick & C. Street R. Co.,* 173 Mass. 587. In that case a statute created a duty upon the railway company to construct its road in streets in the manner provided. Another statute required notice of an injury in a highway to "persons *by law obliged* to keep the highway in repair." This language is found in the opinion:

"The jury were instructed to consider whether the accident was caused by a defective construction, or by a want of repair; and that if it was by a want of repair, the

statute as to notice applied. That notice must be given, in order to entitle the plaintiff to recover, where the injury is caused by a neglect of the defendant to repair what it is obliged by statute to keep in repair, was decided in *Dobbins v. West End Street R. Co.,* 168 Mass. 556."

This obviates any reference to *Dobbins v. West End Street R. Co.,* 168 Mass. 556. *City of Brooklyn v. Brooklyn City R. Co.,* 47 N. Y. 475, was a suit by the city to recover upon a bond given by the railway company to indemnify the city against damages resulting from injuries caused by laying its tracks in streets. *Shalley v. Danbury & B. H. R. Co.,* 64 Conn. 381, reiterates the rule stated in *Nolan v. New York, N. H. & H. R. Co.,* 53 Conn. 461, already noticed.

*Blue Grass Traction Co. v. Grover,* 135 Ky. 685, involved an injury to a race-horse occasioned by a defective bridge (out of repair) over tracks, in a cut, of the traction company which the traction company had contracted with the county to keep repaired. The court held that as the traction company agreed to keep the bridge in repair, only, for the county as its *alter ego,* and was only discharging "the duty which the law places upon the county," it was not liable. The traction company was said not to be liable unless made so by the contract, and as the contract required it to do only what the county was bound in law to do, the contract did not put burdens on the traction company different than those resting upon the county. The contract was not one for profit, nor for construction of works required by law to be performed by the county.

In Nebraska, counties are not permitted to construct culverts without contracts let to bidders where the cost exceeds $500. The duty to build roads or culverts is not mandatory, as in cases of repairs; nor is a contractor to build roads an *alter ego* doing only work the county is by law bound to do. Roads of the character in question are required to follow plans and specifications. If the contractor does his work accordingly, he is not liable for injuries caused by faulty plans. The detail methods as to how the work shall be carried on are left to the contractor

and others employed by him. We do not think the provision for bringing suit against the county within 30 days has any application to present conditions.

5. The next and last assignment considered is that a person injured while operating an unlicensed automobile on a highway cannot recover damages for such injuries. The first impact with that proposition is so violent that it invites instant disapproval. Such automobile is not converted into a wolf to be shot upon the spot. Appellant cites three Massachusetts cases, one from a Pennsylvania district court and one from Manitoba to support its contention. But for those cases we would give little time to the contention. It is interesting to note that the author of one of the Massachusetts opinions speaks of the time when traveling on Sunday was illegal, and observes "the provisions of the act in question substantially resemble those of the Lord's Day act formerly in force." It was also said: "But there is a distinction between an unlawful act which is at least a contributing cause of the accident and one which is merely an attendant circumstance or a condition." Just how an unlicensed automobile, for that reason alone, could be a contributing cause with a hole in the ground may seem metaphysically easy, but legally difficult. It is not necessary for us to either sponsor or distinguish the cases referred to.

Berry, Automobiles (5th ed.) 227, sec. 267, cites cases from more than a score of states as supporting the text, that operating an automobile without a license, or registration, does not affect a person's right to defend himself or to recover damages for personal injuries. We refer to but one of the cases cited. *Wolford v. City of Grinnell*, 179 Ia. 689, opinion by Deemer, J., says: "No authorities need be cited in support of this proposition." If the mere fact that a person is violating a law deprives him of his right to damages for the injuries received by the negligence of another, the rule should work both ways, and if one injures another while violating a law, he ought to have no defense. This court has consistently ruled that a

violation of city ordinances, regulating speed of street cars and requiring signals to be given by trains approaching railroad crossings, when violated, are not *per se* negligence. All of these acts are unlawful, but they must have some proximate relation to injuries received by one who asks damages.

The rule that no duty is owing a trespasser, except to refrain from wilful or wanton injury, until after the owner of premises discovers his presence, while firmly fixed, has been greatly softened toward trespassers habitually using premises for such a period that the owner may be said to be charged with the duty of anticipating such presence. Continued use of premises by trespassers, with knowledge of the owner, makes it the duty of the owner to use reasonable care to discover them. It is common knowledge that during the first two months of every year thousands of unlicensed automobiles travel the highways with a conspicuous display of obsolete license plates, without challenge from the officers of the law. If it be clear that an unlicensed automobile contributes nothing toward causing an accident, it would be harsh and inhuman to apply the strict rules relating to trespassers. It does not behoove private litigants who have caused the death of another by their negligence, perhaps with no greater interest in law enforcement than to absolve themselves, to demand obedience to a law that the state and all law enforcing officers at least wink at. We might consistently add that, as between appellant and appellee, the latter was a trespasser in no sense. We might not be going beyond the spirit of the law to say that one who digs dangerous holes in a highway and deliberately departs, leaving them unfilled or unguarded, with the intention to allow them to remain for weeks and months, knowing that the road is open to the public generally, makes himself a metaphorical trespasser. Section 2778, Comp. St. 1922 provides: "If any person shall injure or obstruct a public road by * * * digging any ditch or other *opening thereon*," he shall "forfeit" a certain sum. Under that provision one who has a right to dig a hole

for temporary purposes does not violate either its letter or spirit by digging the hole, if he fills it when it no longer serves a legal or useful purpose, and before it certainly will become a trap to the wary traveler. We see no need for saying more. This assignment of error is without merit.

For the reasons stated, the judgment of the district court is reversed.

REVERSED AND REMANDED.