# Richmond

## REUBEN L. HAGUE ET ALS. V. H. E. VALENTINE, ADMINISTRATOR, ETC.

January 24, 1944.

Record No. 2730.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*E. P. Barrow* and *Leith S. Bremner*, for the plaintiffs in error.

*W. Potter Sterne* and *A. S. Harrison, Jr.*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Dorothy Webb, who was riding in an automobile being driven by her husband, Dewey Webb, was killed as the result of a collision between the automobile and a truck. H. E. Valentine, Sheriff of Brunswick county, qualified as administrator of her estate. She was survived by two infant children. The present action was brought against Reuben L. Hague, the driver of the truck, John D. Blair and W. A. Blair, the latter two partners, trading as Blair Transit Company, owners of the truck, for damages for the wrongful death of the deceased. The case was tried by jury, and a verdict and judgment for $2,500 have been obtained.

Dewey Webb and Dorothy Webb, originally from Roxboro, North Carolina, but later of Baltimore, Maryland, were on their way from the latter city to their former home in North Carolina. They were proceeding over U. S. Highway No. 1, in a southerly direction, across the bridge which spans Waqua creek, when their car collided with the defendants' truck, which was proceeding in a northerly direction. Dorothy Webb was killed almost instantly, and her husband died the following day. There were no other persons in the automobile. U. S. Highway No. 1 extends generally in a north and south direction through Brunswick county. Originally it was 18 feet in width and, except at bridges and a few other places, the roadway had been widened and made a three-lane highway. However, at the north and south approaches to the bridge, and for several hundred feet on either side, it remained an 18-foot road. The bridge over the creek was of concrete construction, 150 feet in length and 22 feet in width. At the time of the collision the western side of the bridge was being expanded so as to provide an additional lane for traffic. Concrete had been poured for this addition, with the exception of the southern end, at which there remained an uncovered hole which extended down into the creek. Approaching the bridge from the north, from which the Webb car was being driven, the roadway was narrowed from a three-lane drive to a two-lane drive, by placing numerous tar barrels in a line along the highway on the western side, extending for a distance of some 100 yards north of the bridge. The same provision had been made on the south side of the bridge by the use of tar barrels. Burning smudge pots were placed on each of the barrels, affording sufficient light and warning. These barrels extended across the western side of the bridge which, from the photographs, was made approximately two to four feet narrower. The roadway approaching the bridge from both directions was straight, but it descended on each side to the bridge. The weather was clear, the roadway dry, and the visibility good. One approaching in an automobile could be seen for a mile. The

drivers of each of the vehicles here involved could have seen the lights of the other for at least that distance. The collision occurred at approximately eleven o'clock at night. The automobile in which the Webbs were riding was completely demolished, while slight damage was done the truck. The truck was hauling tobacco and, with its load, weighed 35,000 pounds. It was 8 feet wide and 34½ feet long. As it came over the top of the hill approaching the bridge, its speed was admittedly 40 miles per hour and, nearing the bridge, descending the hill, its speed was increased.

At appropriate distances on each side of the bridge the State Highway Department had placed warning signs, which were properly lighted. The speed limit for this zone had been reduced to 25 miles per hour, and a sign calling attention to this reduced speed limit was placed on either side of the bridge. Other signs warned that the bridge was under repair and that there was a barricade ahead, but the driver of the defendants' truck testified that he did not see the signs, though he was familiar with the roadway, having traversed it nearly every day for a considerable time. When the truck and the automobile collided, the automobile was thrown around the right front of the truck, and it was brushed against the east rail, knocking portions of it out. It was carried by the front of the truck entirely across the bridge for 146 feet before the truck was brought to a stop.

We are of opinion that the evidence supports the verdict. From it the jury could have concluded that the driver of the truck was guilty of such negligence as was either the proximate cause of the death of the plaintiff's intestate, or substantially contributed to it. The bridge and the approaches on both sides had been made a danger zone by the State Highway Department, and from the evidence and the photographs it is clearly seen that it was a real danger zone. The situation there called for additional care and caution on the part of the traveling public, and yet this dangerous condition was entirely ignored by the driver of the defendants' truck.

The plaintiff, in his notice of motion, alleged that the automobile in which his intestate was riding at the time was the property of Dewey Webb, and that it was being operated by him. The defendants, in addition to their plea of the general issue, filed a plea of contributory negligence, in which it was averred that Dorothy Webb was the owner of the car, and that she had complete control over it at the time of the collision. It was denied that she was a guest in the car. It was averred that she was guilty of contributory negligence.

Code, sec. 6126 (Michie), provides:

"Where a bill, declaration, or other pleading alleges that any person or corporation, at a stated time, owned, operated, or controlled any property or instrumentality, no proof of the fact alleged shall be required unless an affidavit be filed with the pleading putting it in issue, denying specifically and with particularity that such property or instrumentality was, at the time alleged, so owned, operated, or controlled."

■ ■ The defendants failed to file the affidavit contemplated by the statute denying the ownership and operation of Dewey Webb. They contend that the quoted section has no application here, and that it is applicable only to cases in which the allegation of ownership and operation is directed against a defendant. We do not think there is any merit in this contention, for the express language of the statute makes the section applicable to either the plaintiff or defendant. It reads: "Where a bill, declaration, or other pleading alleges that any person or corporation," etc. The section is applicable not only to a bill or declaration, but also to any pleading, which would naturally include a plea of contributory negligence in which the ownership and operation alleged in the notice is denied. The defendants having failed to file the affidavit under sec. 6126, denying under oath the ownership and operation of Dewey Webb, they are not allowed to question his ownership and operation. It stands as a proven fact.

■ ■ The evidence shows that Dewey Webb was behind the wheel when the automobile was brought to a stop,

and that Dorothy Webb was thrown from it. It also shows, without contradiction, that Dorothy Webb did not know how to drive an automobile. The defense of contributory negligence must be sustained by proof in order to be availing. Here there was no evidence of contributory negligence, nor any evidence from which the negligence of Dewey Webb, if he were guilty of any, could be imputed to Dorothy Webb.

There being no evidence of contributory negligence, instructions based upon that defense, of course, were inappropriate.

After both sides had rested the case, and just before it was to be submitted to the jury, the defendants, by counsel, moved to amend the plea of contributory negligence by adding an affidavit to meet the requirements of section 6126. No additional evidence was offered, and that which had been introduced clearly disclosed that Dewey Webb was operating the car at the time of the collision. The court inquired of counsel for the defendants if he had any evidence to show that the car belonged to Dorothy Webb on the day of the collision. Whereupon, counsel offered a certificate of title issued sometime prior to the date of the collision, purporting to have been issued by the State of Maryland, showing that the title at that time was in her name. The court refused to admit it in evidence because it did not meet the requirements of Code, sec. 6206 (Michie), as to proper authentication. Counsel stated that he had no other evidence touching this point. The court refused to permit the amendment.

There was no error in this action of the court. An inspection of the purported certificate clearly discloses that it did not meet the requirements of section 6206, and for that reason alone should have been refused as evidence. If the affidavit had been made to the plea to the effect that the title to the car was in the name of Dorothy Webb, this alone, without any supporting evidence, would not have established ownership in her on the day of the collision, nor was it sufficient to overcome the direct evidence in the case,

which disclosed that Dewey Webb was operating the car at the time of the collision.

A number of assignments of error are directed at the granting and refusal of instructions. Instruction No. 2, granted upon the request of the plaintiff is questioned. It simply defined the prevailing rule of imputed negligence. Objection is specifically directed to the language, "in which Dorothy Webb was riding as a guest," for the reason that there was no evidence that she was riding as a guest. That she was actually riding in the car, and Dewey Webb was operating it, are facts beyond controversy. There was no evidence that she had any control of the car. On the other hand, as already indicated, she did not know how to drive a car. The inescapable conclusion is that she was a guest.

The propriety and applicability of instruction No. 4, given over objection of the defendants, is seriously questioned. It reads thus:

"The court instructs the jury that if you believe from the evidence that the State Highway Commission of Virginia fixed the speed limit at twenty-five miles an hour, for approximately three hundred yards north and south of the approaches to Waqua Bridge, in Brunswick County, which bridge was under repair on August 5, 1941, and if you further believe from the evidence that the area in question was clearly indicated by markers or signs, showing the speed limit within the area to be twenty-five miles an hour, and that the defendant, Reuben L. Hague, in the operation of his truck on August 5, 1941, drove the same through said area at a speed in excess of twenty-five miles an hour, and that his act in so driving the truck at such speed proximately caused, or contributed to, the accident which resulted in the death of plaintiff's intestate, then you shall find your verdict for the plaintiff against the defendants."

The State Highway Commissioner, as we have seen, had fixed a speed limit of twenty-five miles an hour in the zone in question, and had placed plainly visible signs at the proper approaches to the bridge. The bridge was being reconstructed on the west side, and barricades of tar

barrels with lights on them had been placed on that side of the bridge as a warning to prevent travelers from going too far to the west and being precipitated into the creek below. It is conceded that Hague was driving the truck at least forty miles per hour, and that as he approached nearer to the bridge his speed increased. This was a plain violation of the speed which had been fixed by the State Highway Commissioner. If the excessive speed at which Hague drove the truck proximately caused or contributed to the collision which resulted in the death of the plaintiff's intestate, the plaintiff was clearly entitled to recover. Every phase of the instruction was supported by uncontradicted evidence, and the conclusion of the jury, no doubt, was that the excessive speed caused or contributed to the collision. This conclusion was clearly justified.

There are many other objections to the instructions, and we have examined them with care. They are found to be without merit. The record and briefs have been thoroughly considered, and we are of opinion that the parties have had a fair trial, and that no substantial error has been pointed out. The judgment is therefore affirmed.

*Affirmed.*