HARTFORD FIRE INSURANCE COMPANY, APPELLEE, v.
COUNTY OF RED WILLOW, NEBRASKA, APPELLANT.
30 N. W. 2d 51

Filed December 5, 1947.    No. 32265.

*Charles E. McCarl*, for appellant.

*Colfer, Russell & Colfer*, for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and KROGER, District Judge.

PAINE, J.

Plaintiff brought suit against Red Willow County for $576.74, damages to an automobile, which were caused by its falling into a hole in a public road, plaintiff being compelled to pay said sum by reason of being the insurance carrier. At the close of all the evidence, the plaintiff moved to discharge the jury and direct a verdict for the plaintiff, which motion was sustained, and defendant appealed.

The plaintiff alleged that the defendant, Red Willow County, is duly organized under the laws of Nebraska, and is not under township organization; that there is a public road running east and west between Sections

4 and 9, all in Township 1, Range 28, Red Willow County, Nebraska, which public road had been worked and maintained by the defendant county, which is liable to keep said road in repair.

It is further alleged that one Wilson Coghill was driving his 1940 Chrysler sedan, on September 10, 1946, about 6:30 p. m., between Sections 4 and 9, and at the southwest corner of Section 4 he turned to the right, which was to the north, on the public road, and the automobile was precipitated into a hole or depression, about 8 feet deep and 30 feet in diameter, which hole or depression was completely hidden from sight and view of travelers on said road, which wrecked and damaged the automobile; that the defendant county through its employees had notice and knowledge of the defect in the highway, but willfully and negligently permitted said road to remain in a state of bad repair, and negligently omitted to fill it up, or provide barricades to warn travelers of the danger; that the plaintiff is engaged in the business of insuring automobiles against such damage and loss, and was compelled to pay the owner of said automobile the sum of $576.74, whereupon the owner executed a certain subrogation receipt, attached to and made a part of the petition, thus making the plaintiff the owner and holder of a claim against the defendant county for said sum, no part of which has been paid, and judgment was demanded.

The answer of the defendant county is a denial of many of the allegations in the petition, followed by an allegation that whatever injury, damage, or loss Wilson Coghill sustained by driving his automobile into the hole in the road was occasioned by his gross negligence, which was the proximate cause thereof; that he failed to keep a proper lookout ahead for defects in the highway, that his automobile was not under proper control so that he was able to stop within the

area of his vision, and that he failed to maintain proper brakes. The reply was a general denial.

The defendant assigned as error the refusal of the court to submit the issues to a jury, and the entering of a judgment for the plaintiff.

The evidence disclosed that Wilson Coghill lived in defendant county about one mile west of the town of Marion, which is a mile north of the Kansas line, and that the place of the accident is about four miles north of Marion and fifteen miles southeast of McCook, the county seat of defendant county. Coghill, with his wife and son, was driving west on this county road at about ten miles an hour, and turned toward the north on a public road which was very little used, and within a few feet after turning to the north his left front wheel slipped or dropped into a hole in the highway, causing the car to turn over on its top. The automobile was badly damaged, the itemized exhibit A showing the largest item being $125 for a new top, the total of all the damages amounting to $626.74, but the policy had a $50 deductible clause attached to it, so that the plaintiff insurance company was compelled to pay the owner of the car but $576.74, and thereupon became subrogated to his claim against the county.

The driver of the car testified that there were no barriers shutting off the road; that the weeds grew very high on the west side of this hole, casting a shadow over the road at that time of day; that he had no knowledge that there was a hole there until his left front wheel dropped into it. He testified that the sun did not interfere with his vision.

George Whisler, a witness for the plaintiff, testified that he lives some 300 yards east of the hole, and was watching out of his window and saw the car fall over into the hole, and went right out to see if somebody was caught under the car. He had lived there about eight or ten years, and there had been a hole there for several years, but there was a track around it. He

testified that the pictures introduced in evidence, showing the growth of weeds, tall sunflowers, etc., on both sides of the road, correctly represented the condition at the time of the accident. He further testified that one Bob Puelz had fallen into the hole some three months before.

The quarter of land, adjoining this hole, where Mr. Whisler lived was farmed to wheat by Rudolph Schultz, who testified that at harvest time he had had a talk with L. E. Nokes, in which he told him they were going to harvest the wheat and they wanted to haul it over that road; that it had a high center, and he wanted him to come out and drag the ridges down, and probably three days later, which would have been early in July 1946, they came out and worked the road some. He testified as to the washout in the road in the corner; that while the hole was seven to ten feet deep there was still room for a car to squeeze by; that after they had hauled out wheat, there were rains. He testified that there was no barricade, flag, or warning sign to indicate that there was a hole in the road.

The county called but two witnesses, Myron Bennett, who ran the road maintainer, and L. E. Nokes, in whose commissioner district the place of the accident is located. Myron Bennett, who lives at Danbury, which is five miles east and two miles south of the hole in question, testified that he recalled smoothing up the road at the place of the accident during harvest time in July. His machine is a 74-horsepower motor, and has a 12-foot blade on it, and he was at this place twice about a week apart in July. On cross-examination he testified that he noticed this washout, about 15 or 16 feet from a cornerpost, and he attempted to push some dirt off into it with his blade, but did not fill it up. He was just taking out the high center.

L. E. Nokes, one of the three county commissioners, testified that there are about 570 miles of road in his commissioner district to maintain and supervise. He

testified that he could not recall whether anyone had ever given him notice that any part of the road in question was dangerous to travel.

Frederick Schultz, son of Rudolph Schultz, testified for plaintiff that he had lived in the neighborhood all his life and that this hole had been there five or six years; that there was considerable drainage from the north and northeast running down into that hole, and every time it rained "it would wash out a little bit bigger."

Sheriff Emmett L. Trosper, called by plaintiff, testified that he went out the next morning and took pictures of the hole and of the car on its top down in the hole. He testified that the hole was eight to ten feet deep and fifteen feet wide.

The trial court sustained the motion of the plaintiff for a directed verdict, and thereupon gave the jury one instruction, reading as follows: "Gentlemen of the jury, a motion has been made by the plaintiff that this matter be taken away from the jury and that a directed verdict be given to the plaintiff. On consideration of that motion, the court finds that the evidence here is conclusive that there existed a defect in the road at the south end of the road there between sections four and five in township one, range 28; that that defect was known to have existed at least during the middle of July, 1946, by reason of the fact that one of the county's employees came there to work the road. The county employee said that he tried to make the road safe for the Schultz's, but he placed no barriers or no warning signs to the general public of the defect. The road was open to travel. There were no barriers in any way at either end of the road. There were no barriers placed at the particular hole. The evidence shows that Mr. Coghill entered upon this road driving slowly, or as we say in legal language, was taking due care. There was no contributory negligence on his part. It is true that there is some evidence that Mr. Coghill

made the statement that he might have been blinded by the sun, but, as you know, he stated that he turned his car to the northwest and as he drove, he was driving about ten miles an hour. From that evidence, it is very clear that he was driving as any ordinary, prudent person would have done under the circumstances, and he dropped into the hole. Further, we find that there is no question whether the county had notice. There is no question as to whether or not Mr. Coghill was guilty of any contributory negligence. There is no question but what he was using due care, and further, there is no conflicting testimony as to the reasonable value of repairing Mr. Coghill's car. There is no testimony offered against the testimony that was offered by the plaintiff. Therefore, it leaves no question for the jury to determine, no question of fact, and under the circumstances, the court has directed a verdict in favor of the plaintiff and entered judgment in the sum of $576.74. Therefore, at this time you are excused from further service."

The answer of the defendant county charges that the damages sustained by Coghill were occasioned by his gross negligence, in that he failed to keep a proper lookout for defects in the highway, and did not have his automobile under proper control so that he was able to stop within the area of his vision. The assignment of error rests upon the single fact that, the driver of the car being negligent, it was error for the court to fail to submit the question of negligence and contributory negligence to the jury.

Although the defendant charged negligence in its answer, it produced no witness who testified to any negligence whatever on the part of the driver of the car.

The evidence of plaintiff shows that Mr. Coghill was driving his car along the public road slowly, at a speed he testified as not to exceed ten miles an hour; that at that time in the afternoon, as he was driving west, the sun was about an hour high, but the defend-

ant's attorney on cross-examination could not bring out that it interfered in any way with his vision; however, that would be immaterial, for at the time of the accident he had turned his car toward the north. The rays of the sun struck the rank growth of sunflowers and tall weeds along the west side of this little-used road and shaded the east edge of the washout, which the pictures indicate just barely took out the left track of the road, not reaching to the center of the road, and the sunflowers hid the great hole, eight to ten feet deep and 15 to 20 feet across, out where the ditch at the side of the road would ordinarily be. Would this not constitute a trap to the driver of the car? The evidence shows that he was not familiar with this road and knew nothing whatever of this great washout behind the rank growth of weeds at the side of the road at this place, and there is no evidence to show that he was not driving with the ordinary care required of him at the time.

Exhibit No. 1 is a picture taken by the sheriff the next day from about 25 feet south and east of the hole, and it does show a small hole in the left side of the road, reaching over the left track, but we must consider that when this picture was taken the sun was shining directly on the hole, while at about 6:30 the evening before the tall weeds along the west side would have cast a shadow, which doubtless would entirely conceal the hole from casual observation of an ordinary driver.

It is argued that the sun blinded the driver of the car, and this requires an examination of his testimony, as follows: Wilson Coghill, on direct examination: "Q- Where was the sun about that time, if you remember? A- Oh, I would say about an hour high, if that is an answer. Something like that." On cross-examination: "Q- And you say the sun was about an hour high? A- I'd imagine. Q- Now, was that sun directly in front of you or not? Q- (sic) Well, when do you mean? As long as I was driving straight west, it was. I don't know whether

it quite was. I imagine it was a little south at that time of the year. Q- Did it interfere with your vision at all? A- Not any more than the sun would any time during that time of the afternoon. Q- It was pretty much straight ahead of you before you made the turn? A- Before I turned, I think it was pretty well straight in front of me."

George Whisler saw the top of the car disappear into the hole and went right out; then Coghill was still in the car, which was upside down. On cross-examination Whisler was asked: "Q- Did he say anything about the sun blinding him at about that time? A- I don't know that he did. He said something about the sun sort of blinded him or affected his seeing the road or something. I don't just recall the words."

Do such statements, found only in the cross-examination of these two witnesses, constitute competent evidence of any negligence on the part of the driver of the car? In the opinion of the trial court, it was not sufficient to require the submission of the issue of contributory negligence to the jury, and with that we agree.

However, as the defendant county argues as its first proposition of law that there was some evidence of contributory negligence, and the failure to submit that issue was reversible error, we will discuss that question.

"Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of. To constitute contributory negligence there must be a want of ordinary care on the part of the plaintiff, and a proximate connection between that and the injury." Beach, Contributory Negligence (3d ed. rev.), § 7, p. 7.

The law relating to this question is found in section 25-1151, R. S. 1943, which, after providing that contributory negligence shall not bar a recovery in all cases, ends with the statement, "and all questions of negli-

gence and contributory negligence shall be for the jury." But, notwithstanding the provisions of this statute, the first question is one for the court to determine, i. e., whether or not the evidence as a matter of law is sufficient to warrant the submission of that issue to the jury.

In Cotten v. Stolley, 124 Neb. 855, 248 N. W. 384, this court said: "Is the evidence in this case, which establishes that Alta Cotten was walking either upon the right-hand side of the pavement or upon the graveled shoulder to said pavement, proof of contributory negligence on her part? There is no presumption of contributory negligence in this case."

"*Held,* That there was no proof of contributory negligence on the part of the plaintiff to submit to the jury." City of Wahoo v. Reeder, 27 Neb. 770, 43 N. W. 1145.

In Andersen v. Omaha & C. B. Street Ry. Co., 116 Neb. 487, 218 N. W. 135, this court said: "It follows that, where there is evidence of defendant's negligence but no evidence of plaintiff's contributory negligence, no instruction on comparative negligence should be given to the jury."

"The mere fact that contributory negligence may be pleaded as a defense does not justify the submission of that issue to the jury where there is no evidence to support it. Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19." Stephenson v. De Luxe Parts Co., 133 Neb. 749, 277 N. W. 44.

"In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551.

In Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439, in which plaintiff was a guest in an automobile and was injured by being struck by another automobile, the

answer charged that the plaintiff, who was in the back seat, was negligent in remaining in the stalled car, when he had ample time to get out of the car. This court held that there was no evidence to support a defense of contributory negligence, and therefore it was reversible error to have submitted that question to the jury in instruction No. 11.

"In determining whether a plaintiff has been guilty of contributory negligence as a matter of law, * * * where the evidence in a case fails to disclose negligence on the part of the plaintiff, it is entirely proper for the trial court to refuse to submit to the jury the issue of contributory negligence." 38 Am. Jur., Negligence, § 348, p. 1054.

The true rule should be, for it is supported by a long line of opinions, that, ordinarily, contributory negligence is a question for the jury; but, where there is no basis in the evidence for a finding of contributory negligence, it is error to instruct on the subject and thereby to submit to the jury an issue which is outside the evidence. See Koehn v. City of Hastings, *supra;* Andersen v. Omaha & C. B. Street Ry. Co., *supra;* Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649; Hammond v. Monmouth County, 117 N. J. Law 11, 186 A. 452; Hague v. Valentine, 182 Va. 256, 28 S. E. 2d 720; Adkins v. Raleigh Transit Co., 127 W. Va. 131, 31 S. E. 2d 775.

In conclusion, all that the law required of plaintiff was that he exercise ordinary and reasonable care for his own safety under the circumstances surrounding him.

"The test always is, was he at the time of the accident using such care as a prudent man in such an occupation ordinarily uses, considering the time, place, condition of the highway, the weather, the vehicle used, and the presence of other persons?" 5 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 3312, p. 441.

The accident in this case is one which could happen without any fault or negligence on the part of the driver

of the car. There is nothing about the facts shown in the evidence which raises any presumption of negligence, or want of care, on the part of the driver of the car, and the judgment is hereby affirmed.

AFFIRMED.

SIMMONS, C. J., dissenting.

I dissent. The defendant presents and argues three questions. These must be answered contrary to defendant's contentions if the judgment of the trial court is to be affirmed. The majority neither mentions nor answers two of the questions. The answer given to one is erroneous in my opinion.

Plaintiff alleged that the car involved in this accident was being driven with due care and under proper control when it was "thrown and precipitated" into a hole in the road which was "completely hidden" from the sight and view; that the defendant county had notice or with the exercise of reasonable diligence could have known of the want of repair of the road; and that it negligently failed to render the road safe for travelers or to provide barricades.

The defendant answered, admitting its corporate capacity, denying generally, and pleading that whatever damages occurred to the automobile were caused by the gross negligence of the driver which contributed directly thereto and was the proximate cause of the accident. The reply was a denial of allegations in the answer which were not admissions of allegations of the petition.

Plaintiff in its motion for a directed verdict contended first that the evidence showed conclusively negligence of the defendant county in maintaining the road and notice to the county, and that there was lack of evidence of contributory negligence of the driver of the car.

The trial court held that there was no issue of fact to be submitted to the jury and directed a verdict in plaintiff's favor.

By motion for a new trial the defendant contended, among other things, that the court erred in not sub-

mitting these three issues to the jury: (a) The contributory negligence of the driver of the car; (b) the negligence of the defendant in failing to use reasonable and ordinary care in the maintenance of the road; and (c) the knowledge or lack of knowledge of the defendant as to the defective or dangerous condition of the road.

By its brief here the appellant states the above as the three questions involved, and assigns as error the refusal of the court to submit the issues to the jury and in directing a verdict for the plaintiff. Defendant by its brief argues the three propositions. The plaintiff in its brief states that the above questions are involved and argues them. In the face of this record, the majority opinion states that "The assignment of error rests upon the single fact that, the driver of the car being negligent, it was error for the court to fail to submit the question of negligence and contributory negligence to the jury." I submit that the assignment is not so limited.

The majority decides that there was no evidence of negligence on the part of the driver of the car sufficient to take the case to the jury, and affirms the judgment without stating or answering the other two questions involved. These two undetermined contentions become important in view of the evidence offered by plaintiff that in July 1946, preceding this accident in September 1946, there was a small hole in this roadway; that the road was worked and made passable at that time; that rains subsequent thereto caused the much larger washout. I find no evidence as to the time when the washout occurred which produced the hole into which the car was driven. I find no evidence of notice to any county official, or knowledge by anyone of the condition of the road that arose subsequent to the July operations, and which existed at the time of the accident. An answer to these questions is required if this judgment is to be affirmed.

But, as I see it, the judgment must be reversed for

failure to submit the issue of contributory negligence to the jury.

The majority states that the defendant produced no evidence of negligence on the part of the driver of the car. The rule is: "If contributory negligence is relied upon by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence pertinent to that issue contained in the whole record, except insofar as the same may appear in evidence adduced for plaintiff." Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412.

What, then, is the evidence as adduced for the plaintiff, bearing on the question of contributory negligence?

There was a "main-traveled" road, a "good traveled road" running east and west. The pictures show it to be graded and without distinct tracks from shoulder to shoulder. Branching off this road in a northwest direction is a road described in the evidence as "slightly-used," a "trail," "just two tracks." The pictures show it to be two tracks with low weeds between the tracks and at points across them as the tracks lead to the hole from the main-traveled highway. The hole was from 30 to 50 feet north of the turn from the main-traveled highway.

Now, what about the hole which the majority describes as a "small hole in the left side of the road, reaching over the left track" and which "just barely took out the left track of the road, not reaching to the center of the road." The evidence shows the hole to be from eight to ten feet deep and from 15 to 20 feet wide. From the direction in which the car was traveling, plaintiff's pictures show that the "small hole" took out the entire left track for a distance of several feet. Another picture shows that it extended across and up to, if not actually into, the right track. The sheriff testifying for the plaintiff on direct examination said that "it didn't quite take in that right-hand track."

Now, as to whether or not the hole could be seen,

the sheriff testified that the "edge," "the farther bank of the washout" could be seen at a distance of 50 yards, which would be at least 100 feet down the main highway before coming to the turn. It was "clearly visible" from 25 feet away. The picture at that distance shows it to be a great gap in the left track and into the weeds between the two tracks. With that situation existing, the driver of the car, when the sun was about an hour high, drove west along the main-traveled road and made the turn at a speed of not over ten miles an hour, and drove his car into the hole. He said he could not see any evidence that the hole was there as he approached it. He did not see the hole when the farther bank was visible 150 feet away; he did not see the hole when it was "clearly visible" 25 feet ahead of him; he did not see it when he was one foot from it. He was not conscious that the hole was there until he hit the bottom of it with his car bottom-side-up. The condition of the road itself was notice that would cause a prudent driver to proceed with caution. The hole was there to be seen by anyone using his eyes. So far as the use of his eyes is concerned, the driver just as well might have been driving blindfolded.

The majority holds that this is not evidence of contributory negligence sufficient to go to a jury. I disagree. What excuse did the driver of the car give for not seeing what could be seen? He gave two. He testified that the next day he visited the scene and admitted that the hole was visible but "not very far." He testified that sitting in the car with "the long nose of the car out in front" it would interfere with his vision "a little" going directly toward the hole. The majority does not give credence to that statement. The driver makes no mention of shadows in his reconstruction of the event the day following the accident. Much later at the trial "shadows" come into the picture in the way now to be mentioned. The majority excuses his failure to see what was there to be seen because the weeds at the side of

the road hid the hole and the low sun behind the weeds "shaded the east edge of the washout." But the driver of the car testified on cross-examination that the weeds on the road did not interfere with his vision "between me and the hole." That ought to take care of the matter of the weeds. But plaintiff's counsel on redirect in a leading question had him affirm that the weeds on the east side of the hole did not interfere with his vision. He then was asked if he saw any weeds on the "west side of the excavation." He answered (and here is the only evidence I find as to shadows): "I'd tell you how I'd have to describe that. I couldn't describe it as actually seeing weeds, because it was a shadow. The weeds were there and the sun was low enough that it cast a shadow right there; you might say, in the shadow of the weeds. There was weeds there, but I couldn't describe them as weeds because there was a shadow." I submit that he did not testify that he could not see the hole because of a shadow; that he did not testify that the shadow covered the hole, and most certainly it is not evidence that the "east edge of the washout" was shaded. I submit also that the statement of the majority that "* * * the tall weeds along the west side would have cast a shadow, which doubtless would entirely conceal the hole from casual observation of an ordinary driver" is a mere argumentative supposition, not supported by the evidence. Further, if it is an inference that can be properly drawn from the evidence, then it is an inference for a jury to make and not for a court to make. The question as to whether there was a shadow there that interfered with the vision of the hole is at best a jury question. If, however, there was a shadow there which materially impaired or wholly destroyed the driver's visibility, then that shadow constituted a condition on the highway which imposed on the driver of the automobile a duty to exercise a degree of care commensurate with that circumstance. Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315. In Dickenson v. County

of Cheyenne, 146 Neb. 36, 18 N. W. 2d 559, we held that fog which made it more difficult to see imposed an additional reason for the exercise of care commensurate with the surrounding circumstances. The shadow, if it existed, imposed an added duty rather than furnishing an excuse for the negligent driving here involved.

In Sharp v. Chicago, B. & Q. R. R. Co., 110 Neb. 34, 193 N. W. 150, a motorist driving down a highway on a dark, windy, dusty night ran into a pillar located in the center of a highway. He testified he was looking. We held that the issue of contributory negligence was for the jury.

In Tutsch v. Omaha Structural Steel Works, 110 Neb. 585, 194 N. W. 731, we had a driver who testified that he was proceeding at night at a reasonable speed with his lights on, and looking saw a ditch across a road. He tried but was unable to stop. We held that the question of contributory negligence was for the jury.

In Pratt v. Western Bridge & Construction Co., 116 Neb. 553, 218 N. W. 397, a driver going down a highway at night turned to avoid hitting a pedestrian, and ran into a hole in the side of a roadbed which was so filled with weeds that the lights of the car did not reveal its condition. We held that the matter of contributory negligence was for the jury.

In Cromwell v. Fillmore County, 122 Neb. 114, 239 N. W. 735, there were holes washed in the road. The driver testified that his lights were on; he was looking; he used his brakes; he was unable to see the ruts in time to stop. There were no barriers nor warnings. We held that the evidence was sufficient to go to the jury on the question of contributory negligence.

In Dickenson v. County of Cheyenne, *supra,* a driver on a foggy night ran into a dead-end road. We held there was contributory negligence as a matter of law.

Admittedly, these are night cases where darkness required care commensurate with the circumstances, but here we have a driver who had the advantage of

daylight and did not use it. He did not look; he did not see what was to be seen.

We have held that want of ordinary care and not knowledge of the danger is the test of contributory negligence. Welsh v. City of South Omaha, 98 Neb. 148, 152 N. W. 302; Klement v. Lindell, 139 Neb. 540, 298 N. W. 137; Grantham v. Watson Bros. Transportation Co., 142 Neb. 362, 6 N. W. 2d 372, on rehearing 142 Neb. 367, 9 N. W. 2d 157; Frazier v. Anderson, 143 Neb. 905, 11 N. W. 2d 764; Tite v. Omaha Coliseum Corporation, 144 Neb. 22, 12 N. W. 2d 90. Accordingly, the lack of familiarity with the road and the lack of knowledge of the "great washout" which the majority stresses are not the tests and do not excuse.

We are not here required to determine whether or not this driver was guilty of contributory negligence as a matter of law. We are asked to determine that this is a jury question. I hold that it is that at least, and would reverse and remand the cause.

YEAGER and CHAPPELL, JJ., concur in this dissent.