956 F.2d 263
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paul Edward CLARK, Plaintiff-Appellee,
v.
Teresa M. TORRES, Defendant-Appellant.
 No. 90-3039.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1990.
Decided Feb. 27, 1992.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca Beach Smith, District Judge. (CA-89-567-N)
 Argued: John George Crandley, Preston, Wilson & Crandley, Virginia Beach, Va., for appellant.
 Edward Francis Halloran, Virginia Beach, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 At trial Paul Edward Clark, a motorcyclist, prosecuted this personal injury action against Teresa M. Torres, the driver of an automobile who struck and injured him and who then left the scene of the accident. The jury returned a verdict in favor of Clark for the sum of $100,000 in compensatory damages and $75,000 in punitive damages. Ms. Torres appeals, arguing the trial court erred in (1) submitting the issue of punitive damages to the jury based on the hit-and-run; and (2) refusing to instruct the jury on the issue of contributory negligence. Finding no error, we affirm the decision of the district court.
 
 
 2
 The traffic accident which was the genesis of this litigation occurred on an afternoon in the Fall of 1987 at the intersection of Maryland Avenue and Powhatan Street in Norfolk, Virginia. Maryland Avenue consists of two northbound lanes and two southbound lanes, separated by a ten-foot grassy median. Powhatan Street is a two-lane street running east and west. A stop sign is located on the west side of Maryland Avenue controlling the eastbound traffic on Powhatan Street entering the intersection. Torres was traveling east on Powhatan Street immediately prior to the accident and Clark was heading north in the left-hand lane of Powhatan Street.
 
 
 3
 Ms. Torres testified she came to a complete stop at the intersection stop signal for five to ten seconds before entering the intersection. After stopping she accelerated across the two southbound lanes of Maryland Avenue and into the break in the median separating the north and southbound lanes of Maryland Avenue. While in the median area, she applied her brakes, claimed to have looked both directions, saw no traffic approaching and then accelerated across the remaining lanes of Maryland Avenue. Another witness, however, testified that Torres accelerated from the stop sign without slowing down until such time as she broadsided Clark, who was driving through the intersection on his motorcycle. According to a stipulation, Torres was driving within the twenty-five mile speed limit when the accident occurred.
 
 
 4
 A witness testified that he heard a loud thud with metal hitting metal which attracted his attention. The witness further testified the sound was unusual and that he also could hear the sound of Clark's motorcycle rolling across the intersection. The officer who investigated the accident found a bumper guard which matched the portion of a guard missing from the right front bumper of Torres' van. This bumper guard later was determined to have been sheared from Torres' van after having pierced the crankcase of Clark's motorcycle. Also, a section of the van grill was dislodged by the impact of the van with Clark's lower body. The police officer also determined that a wrinkle and dent in the front bumper of the van near the license plate was caused by the impact with Clark's motorcycle. Finally, a dent was found in the hood of the van apparently resulting from impact by Clark's headgear.
 
 
 5
 At trial Torres testified that the only event she could connect to the accident was the sound of a thud. Torres stated that she believed she had run over a stick or an object like a reflector located in the roadway. As a result she did not stop, but continued with her normal route and returned to her work place.
 
 
 6
 Torres admitted to consuming two beers immediately prior to the accident. The investigating officer testified he interrogated Torres approximately one hour following the accident. At the time of the interview Torres was ill and vomiting. The officer said Torres explained the vomiting was due to an ulcer. At trial Torres denied the conversation and stated that her concern for Clark's condition caused her to vomit. The investigating officer further opined, although Torres appeared sober when questioned, he would have administered a breath test to determine evidence of driving under the influence had Torres not advised him of the ulcer.
 
 
 7
 Clark testified that as he was lying on the street at the accident scene he heard a report on a police radio of a hit-and-run. Clark inquired of an officer at the scene and was informed that the hit-and-run he heard described was his accident. Clark testified that hearing this made him angry and upset.
 
 
 8
 The first issue for decision is whether Torres' actions were sufficiently wanton and willful to justify the giving of a punitive damage instruction. An award of punitive damages may be based upon a showing of conduct which evinces a conscious disregard of the rights of others. Booth v. Robertson, 236 Va. 269, 374 S.E.2d 1 (1988); Baker v. Marcus, 201 Va. 905, 114 S.E.2d 617 (1960); Friedman v. Jordan, 166 Va. 65, 184 S.E. 186 (1936).
 
 
 9
 Torres argues that her actions amounted, at most, to simple negligence. She attempts to focus our attention on the accident alone without regard to her leaving it and the victim. If there had been a negligent "hit" and no "run" from the accident, the factual predicate likely would not have warranted consideration of exemplary damages.
 
 
 10
 Where the victim's proof demonstrates hit-and-run accompanied by physical injury and outrage from the knowledge that the tortfeasor had run from the consequence of her tort, it is not error for the jury to consider punitives. Under the facts presented, Torres' conduct in causing and then leaving the accident was one continuum of activity evincing a conscious disregard for the rights of others. See and compare, Baker v. Marcus, supra, 201 Va. 909, 114 S.E.2d 621.
 
 
 11
 Torres finally contends the trial court erred in refusing to instruct the jury on the issue of contributory negligence.
 
 
 12
 It is well settled under Virginia law that a contributory negligence instruction is appropriate only when there is evidence on which to base it. Pointer v. Green, 193 Va. 757, 71 S.E.2d 155 (1952); Hague v. Valentine, 182 Va. 256, 28 S.E.2d 720 (1944); Price v. Burton, 155 Va. 229, 154 S.E. 499 (1930). On that question, the district court stated:
 
 
 13
 I find no evidence whatsoever before the court upon which reasonable minds could differ to find any contributory negligence on the part of Mr. Clark in this case. There is just no evidence here to show that [Clark] was in any way contributorily negligent. The pictures, the way of the hit, the testimony of the eyewitnesses, the testimony of the policemen, the testimony of [Clark], the testimony of [Torres]--there is just nothing here whatsoever to support an instruction on contributory negligence and I will not give one for those reasons.
 
 
 14
 (Appellant's appendix, p. 321).
 
 
 15
 Moreover, Torres herself testified at trial that she knew of nothing wrong that Clark did. In her brief Torres states "neither driver saw the other in time to take effective action to avoid the accident" and that Clark "never saw [Torres'] vehicle until it was too late." (Appellant's brief, pp. 11, 12).
 
 
 16
 We conclude the district court did not err in instructing the jury on punitive damages and in refusing to instruct on contributory negligence. Accordingly, the decision below is hereby
 
 
 17
 AFFIRMED.