Sidney Novak, appellant, v. Robert P. Laptad et al., appellees.

40 N. W. 2d 331

Filed December 22, 1949. No. 32689.

*Wear & Boland,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda,* for appellees.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Messmore, J.

This action was instituted in the district court for Douglas County by Sidney Novak as plaintiff against Richard Laptad, the driver of a truck owned by his father, Robert Laptad, and used in the latter's business, and Robert Laptad as defendants. The purpose of the action was to recover damages resulting from injuries which the plaintiff received in an accident involving his automobile and the defendant Robert Laptad's truck, allegedly caused by the negligence of Richard Laptad in the operation of the truck. The case was tried on the issues of negligence of the two defendants, the contributory negligence of the plaintiff, and on comparative negligence of the plaintiff and defendant driver. A jury

returned a verdict in favor of both defendants. Plaintiff's motion for new trial was overruled and plaintiff appealed.

For convenience we will hereafter refer to the appellant as plaintiff and the appellees as defendants, using their given names to distinguish between them.

It appears from the record that on July 28, 1947, the defendant Robert Laptad was the owner of three combines and other equipment used in his business of harvesting small grain. One of the combines was a new, 7-foot, red Massey-Harris Clipper, 12 feet 3 or 5 inches in width, 8½ feet in height, and weighing 6,000 pounds. This combine was loaded by backing it onto the flat bed of the defendant's ton-and-a-half 1940 Chevrolet truck which was 8 feet in width. The truck stood about 4 feet high from the ground, and its weight was 6,500 pounds. When loaded on the truck the combine extended 2 feet beyond each side of the truck, which exceeded the statutory maximum total outside width of 8 feet. § 39-719, R. S. 1943. On each side of the truck was a red flag cut in strips, and also a like flag at the back of the truck.

The truck, as loaded, was proceeding west on U. S. Highway No. 30 en route to a farm six miles north of Dix, Nebraska, to harvest. This is a black-top highway 22 feet wide with a white line three or four inches wide down the center dividing the east and west traffic. The defendant Richard Laptad, the 13-year-old son of Robert Laptad, was driving the truck. He did not have a driver's license, nor was he authorized by his father to drive on highways. He was accompanied by an employee of his father, a truck driver who usually drove this truck. This truck driver was seated to the right of Richard in the cab, and was looking to the right along the highway for road signs, culverts, and posts, to warn the driver, if necessary, to avoid striking any such obstacles.

The plaintiff was returning from California en route to Omaha, driving a yellow 1947 Mercury convertible, a

dealer's car presumably belonging to a partnership of which he was a member. As he passed through the town of Dix he was driving 20 to 25 miles an hour in obedience to a speed sign located on the north side of the highway. Just east of this sign was one which gave the population of Dix. It was about 9:30 a. m., July 28, 1947. The day was clear, the pavement dry and straight, and the lay of the land was level. After he left the town limits proceeding east on U. S. Highway No. 30, on the right or south side of the highway, he increased the speed of his car to 30 or 35 miles an hour and looked straight ahead. A block or 300 feet distant he noticed a vehicle approaching on the north side of the highway, or its right side, containing a heavy load. He did not discern just what the load consisted of, but there was something sticking out from the side of the vehicle. He estimated the speed of this vehicle, which developed to be the Robert Laptad truck with combine loaded onto it, at 30 to 35 miles an hour, or the same rate of speed that he was traveling. The wheels of the truck were about on the white line of the highway which would put the rest of it two or three feet over the white line to the south.

The plaintiff testified that when he arrived at a point 75 yards east of the town limits and the truck was within 60 feet of him, it suddenly swerved to the south, or his side of the road, and he pulled to the shoulder of the road to the south to avoid being struck. On the south side of the highway, constituting the shoulder, the ground is level for four or five feet at this point with a saucer-like slope a distance of 15 feet to where there is a line of poles. On the north side of the highway the shoulder is rougher than on the south, and runs to a line fence.

The plaintiff's car was for the most part on the south shoulder of the highway at the time of the accident, as testified to by him. The plaintiff's car was struck just above the cowl where the windshield begins, and the left side was torn from the front to the back. The steel windshield frame was completely sheared off on the left side.

An aerial on the left side was cut off above the cowl. The top, which was up, was pushed back, and the door handle on the left side of the car was demolished. There was glass from the car on the pavement about 40 feet to the rear of the car.

The plaintiff's car, at the time of the impact, traveled 40 to 50 feet east and stopped entirely off the pavement on the shoulder of the highway to the south, and about a foot from the pole line. The defendant's truck did not stop, but pulled straight ahead to a point in Dix where the truck and equipment were pulled off the highway preparatory to proceeding north where Richard's father was to direct the further movement of the truck and equipment. The rest of the equipment had preceded the truck Richard was driving.

A filling station operator testified with reference to U. S. Highway No. 30 and the lay of the land at the point of the accident which was 75 yards east of the town limits and 100 yards from his filling station. He described the shoulders of the highway on the north and south sides the same as has been set out previously in this opinion. He did not see the accident but arrived shortly after it had occurred. The plaintiff's car was sitting in the ditch on the south side of the highway a foot or 15 inches from the pole line facing east, the direction in which the plaintiff was traveling at the time of the accident. Glass was scattered around for some distance behind the plaintiff's car and along the side of it. Some of the glass was on the highway. The day was clear and the highway straight and dry. The truck was not at the scene of the accident, it had moved on. He examined some exhibits, pictures of the plaintiff's car taken after the accident, and testified such exhibits were a true representation of the way the plaintiff's car looked after the accident.

The defendant Richard Laptad testified that he was paying attention to the white line on the highway while driving, and the white line was two feet to the left of the left fender which would put the combine in the vicinity

of the center line where he was endeavoring to keep it. He saw the plaintiff's car about a block distant, and the wheel of the car was "right on the white line." Richard kept the same position as he proceeded straight ahead, and testified that he was driving from 10 to 15 miles an hour. There was no reason to swerve to the south at any time, he did not do so, and he did not force the plaintiff to drive his car onto the shoulder on the south side of the highway. He felt a "tug," or kind of a pull, as he passed the plaintiff's car. After he had stopped at an advantageous point to get the truck off the highway, he noticed that the bar on the combine was bent. He proceeded to the farm where the harvesting was to be done and informed his father of the accident. There was nothing wrong with the truck. He further testified that he returned to the scene of the accident and there was glass in the middle of the highway but none on the edges. Parts of the Mercury were hanging on the combine. He also testified that the plaintiff's car was traveling at a rate of speed of 40 miles an hour as it approached the truck. He identified a mark on the left fender of the Novak car and surmised that it was a tire mark from the combine. At the point where the accident occurred, approximately 20 yards east of the town limits of Dix, the land was flat. At the time of the accident there were no other cars in the vicinity and none had passed either the plaintiff's car or the truck before the accident.

Robert Laptad testified that immediately upon being notified of the accident he proceeded to the point where it occurred. The plaintiff's car was sitting off the highway in the ditch near the pole, and there was glass scattered in the center of the highway. He testified to the lay of the land, the shoulders of the highway north and south of the pavement as has been heretofore described, and to a conversation had with the plaintiff Novak to the effect that he believed one of his drivers was involved in the accident. He did not know until Richard told him that Richard was driving the truck. He further testified

that he did not inform each individual each morning as to their respective duties, and that this went for Richard also. He also testified that Richard had handled tractors and trucks in assisting in farming on the home place, and was capable of doing a man's work. There is also evidence of a vast number of combines being in the vicinity of western Nebraska during the cutting season and that it is common for a part of these combines to be transported as was the combine in the instant case. He identified from an exhibit a mark on the left front fender of the plaintiff's car and believed it to be a tire mark.

The foregoing constitutes a résumé of the relevant and material evidence on the issues of negligence as heretofore mentioned.

The plaintiff assigns as error the submission to the jury of contributory negligence on his part, for the reason that the evidence failed to establish any contributory negligence whatsoever on the plaintiff's part.

We set forth the substance of the statute regulating speed, as being necessary in determining this appeal.

On the question of speed on the highway outside the limits of a town or city, section 39-7,108, R. S. Supp., 1949, provides for a speed of 60 miles an hour between the hours of sunrise and sunset, and further states: "The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed * * * when traveling upon any narrow or winding roadway, or when special hazards exist with respect to * * * other traffic * * * and speed shall be decreased as may be necessary to avoid colliding with any * * * vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care; * * *."

As stated in Folken v. Petersen, 140 Neb. 800, 1 N. W. 2d 916: "* * * the lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was

greater than was reasonable and prudent under the conditions then existing."

With the foregoing statute in mind, we summarize the facts heretofore adduced.

It is apparent that the plaintiff, as testified to by the defendant Richard Laptad, was proceeding east on his own side of the highway on this clear, warm morning, in open country on a paved road that was dry, with no obstacles of any nature except the defendant's truck as loaded with the combine proceeding west on its side of the highway. Richard Laptad first noticed the plaintiff's automobile at a distance of a block, or approximately 300 feet, and estimated the speed of the plaintiff's automobile at 40 miles an hour. This is the only time that he saw the plaintiff's automobile. He does not testify that he saw it immediately prior to the accident, or at any other time. His testimony is that he was driving 10 to 15 miles an hour; that the white line dividing the highway was two feet from the left front fender of the truck; and that he proceeded west in that manner until he pulled off the highway and stopped near the section houses in Dix. All he knows about the accident was that he felt a tug or a pull, and he thought the accident occurred 20 yards east of the sign designating the speed limit.

The plaintiff observed the defendant's truck at a distance of a block, and testified it was going at the same rate of speed he was, 30 to 35 miles an hour. There is no evidence to show that he did not keep a proper lookout under the circumstances of this case. This is manifested by the physical facts which are not denied in the following respects. The plaintiff's automobile proceeded a short distance east from the point where the accident occurred, and immediately after the accident was 12 or 15 inches from a pole line which the evidence shows was 15 feet from the south edge of the paved highway. His automobile was facing east, the direction in which he was traveling at the time of the accident. There was glass

behind his car where he had proceeded after the accident, along side thereof, some on the pavement, some beyond the pavement on the south on the shoulder of the highway, some about the middle of the highway, and none north of the center line of the highway. There was a black mark on the left fender of the plaintiff's automobile that obviously came from the tire on the combine which overhung the body of the truck.

The plaintiff did not violate the afore-cited statute with reference to speed, and he did not fail in such manner to do what would be reasonable and prudent under the circumstances.

Under the facts as to the submission of contributory negligence to the jury, the following authorities are applicable.

"Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of.

"The mere fact that contributory negligence may be pleaded as a defense does not justify the submission of that issue to the jury where there is no evidence to support it.

"Ordinarily, contributory negligence is a question for the jury; but, where there is no basis in the evidence for a finding of contributory negligence, it is error to instruct on the subject and thereby to submit to the jury an issue which is outside the evidence." Hartford Fire Ins. Co. v. County of Red Willow, 149 Neb. 10, 30 N. W. 2d 51. See, also, Andersen v. Omaha & C. B. St. Ry. Co., 116 Neb. 487, 218 N. W. 135; Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19; Stephenson v. De Luxe Parts Co., 133 Neb. 749, 277 N. W. 44; Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439; Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757; 38 Am. Jur., Negligence, § 348, p. 1054.

There is competent evidence of negligence on the part of the defendant driver from which a jury could believe that the truck loaded with the combine was over the center line of the highway at the time of the accident, or that the rod protruding from the combine to the rear of the truck was over the center line of the highway, or that the defendant driver swerved over the center line of the highway into the plaintiff's car. It is for the jury to determine whether or not any of the foregoing evidence of negligent acts on the part of the defendant driver was the proximate cause of the accident.

In view of the evidence and the physical facts, we conclude there was no evidence of contributory negligence on the part of the plaintiff that warranted submission of this issue to the jury by the trial court, and in this respect the trial court committed prejudicial error. It also follows that the instruction on comparative negligence should not have been given, and it was error to give this instruction under the circumstances.

Other assignments of error need not be determined.

We reverse the judgment and remand the cause for new trial.

REVERSED AND REMANDED.