THRESSIE M. BAY, APPELLANT, V. NORMAN ROBERTSON, APPELLEE.

56 N. W. 2d 731

Filed January 23, 1953. No. 33213.

*William S. Padley,* for appellant.

*Bernard B. Smith* and *Elbert H. Smith,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This action was instituted in the district court for Dawson County by Thressie M. Bay as plaintiff against Norman Robertson defendant. The purpose of the action was to recover for personal injuries and property damage which the plaintiff received in an accident involving her automobile and the defendant's truck, driven by him, allegedly caused by the negligence of the defendant in the operation of the truck. The case was tried to a jury on the issues of negligence of the defendant, contributory negligence of the plaintiff, and on the comparative negligence of plaintiff and defendant. The jury returned a verdict in favor of the plaintiff and against the defendant in the amount of $644.60. The plaintiff filed a motion

for new trial which was overruled. Plaintiff perfected appeal to this court.

For convenience we will hereafter refer to the parties as originally designated in the district court.

It appears from the record that on November 15, 1950, the plaintiff was the owner of a 1935 model two-door Chevrolet. The defendant owned a 1950 Ford tractor and semitrailer equipped with hydraulic brakes on the rear wheels of the tractor and vacuum brakes on the trailer. The truck had a four-speed transmission. At the time of the accident the truck was loaded with five-high baled straw, 6½ tons in weight. The plaintiff resides in Kearney and is a traveling saleslady for a silverware concern. On November 15, 1950, between the hours of 10 and 11 p. m., she left Gothenburg, traveling east on U. S. Highway No. 30 at a rate of speed of 35 to 40 miles an hour. The highway was dry, and the weather clear and cold. She continued to drive east at the same rate of speed.

The plaintiff testified that as she was driving east on her own side of the highway she was watching for traffic ahead of her, and traffic that might be behind her by looking into the rear-view mirror on her car. There were no cars in front of her driving in the same direction. The traffic seemed to be some distance from the front of her, coming towards her, and behind her. All at once bright lights shown into her car. She looked into the rear-view mirror and saw what she believed to be a truck, but was not sure. This vehicle appeared to be running bumper to bumper with her car. She glanced to the front to see if the truck was there or had gone around her, but could see that it had dropped back quite a little ways. She observed traffic approaching from the opposite direction, quite a distance away. She could barely see the lights. She did not remember whether that oncoming traffic met her car or not. The first thing she knew glass was crashing and the vehicle behind her had run into the rear of her car. After her

car was struck it was pushed straight down the highway, she did not know how far. When it finally stopped, two men came to the door and asked her if she was hurt. Her car was pushed onto the shoulder of the highway. The rear end was mashed in. She tried to open one of the doors and it nearly fell off. The body of the car was knocked out of line.

The defendant testified that he was engaged in the trucking business and owned two trucks. The 1950 Ford tractor with the semitrailer was the one involved with the plaintiff's car in the accident which occurred about $3\frac{1}{2}$ miles east of Gothenburg. He was traveling behind the plaintiff's car, and when about a block distant from her car he pulled out to pass. He believed he had a lot of time as far as the traffic ahead was concerned. As he moved along beside the plaintiff's car he was unable to proceed as fast as he thought he would be, and when he got within 50 to 100 feet he saw he could not pass for the reason that there was a car coming towards him awfully fast. He estimated the speed of this car to be 70 miles an hour. It had bright lights. He dimmed his lights but believed the oncoming car did not. He pulled back into his own lane of traffic. Defendant further testified that he believed the plaintiff's car must have "slowed up, or something" because he thought he had a lot of room, and the next thing he knew he was right behind the plaintiff's car. He tried to stop, but struck the rear end of the plaintiff's car. It was a direct blow, his truck coming into contact with the back of the plaintiff's car. He slammed on his brakes and endeavored to stop the whole outfit. He brought his outfit to a stop about 150 feet distant, both the plaintiff's car and his truck proceeding straight down the highway that distance. He pushed the plaintiff's car off onto the shoulder of the highway with his truck. The two vehicles had become hooked together on the pavement and continued so when they were pulled off onto the shoulder of the highway. One taillight on the left side of the

plaintiff's car was burning. To get the plaintiff's car and his truck apart, the plaintiff's car was turned to the shoulder of the highway and it came loose as it went over into the shoulder.

On cross-examination the defendant testified that the plaintiff was going a little slower than he was. He was not gaining on her very fast, and he was traveling about 40 miles an hour. There was a distance of 50 feet between his truck and the plaintiff's car when he pulled back into his lane of traffic. The plaintiff's car had no stop light on it, and he had no way of telling whether she slowed her car down or not. The only observation he could make in this respect was the distance between the two vehicles. The difference in speed between the plaintiff's car and his truck when he endeavored to pass was 5 to 10 miles an hour. At that time he was traveling at a rate of speed of 40 to 45 miles an hour while the plaintiff was traveling at 30 to 35 miles an hour. When he pulled back into his lane of traffic he was maintaining the same rate of speed and thought the minute the oncoming car would pass he would proceed around the plaintiff's car. He further testified that he could not automatically increase his speed to go around the plaintiff's car with the truck loaded as it was. After his truck was stopped he went over to the plaintiff and asked her if she was hurt.

An employee of the defendant who was driving one of his trucks testified that he was about 60 rods behind the defendant's truck proceeding in the same direction. He saw a puff of dust and believed that the defendant had a flat tire. He slowed down as there was a car coming from the opposite direction and he figured he should drive to the shoulder of the road. He stopped about 100 feet behind the defendant's truck. By direction of the defendant he put up flares. He did not help with the wreckage for that reason.

A traffic enforcement officer of the Nebraska Safety Patrol on duty arrived at the scene of the accident about

11:30 p. m. At that time the vehicles had been moved off onto the shoulder of the highway and were upright and headed in an easterly direction. He asked the defendant how the accident happened and the defendant told him that he was "trying to jockey" traffic, that he saw the oncoming traffic and tried to maintain his speed in order to keep going and pass the plaintiff's car. He thought he would have time enough to swing around the plaintiff's car before the car approaching from the opposite direction met the plaintiff's car; that he had misjudged the speed of the oncoming car and did not have time to apply his brakes; and that in returning to his lane of traffic his truck struck the rear end of the plaintiff's car. This witness testified that there was a standard taillight that was still burning on the plaintiff's car; that there was no opportunity to make measurements with reference to the distance from the point of impact to the place where the vehicles stopped; and that he was unable to determine where the truck and the plaintiff's car came together on the highway. There was no indication of black marks on the pavement to the rear of where he found the two vehicles. If there was any debris on the highway it was slight; he noticed none. He made a report which showed there were no defects on the vehicles involved which had anything to do with the accident.

The plaintiff assigns as error that the district court erred in submitting any question of contributory negligence on behalf of the plaintiff, for the reason that no evidence was introduced from which any contributory negligence could be charged to the plaintiff.

Under the facts as to the submission of contributory negligence to the jury, the following authorities are applicable:

"Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant,

is a proximate cause or occasion of the injury complained of.

"The mere fact that contributory negligence may be pleaded as a defense does not justify the submission of that issue to the jury where there is no evidence to support it.

"Ordinarily, contributory negligence is a question for the jury; but, where there is no basis in the evidence for a finding of contributory negligence, it is error to instruct on the subject and thereby to submit to the jury an issue which is outside the evidence." Hartford Fire Ins. Co. v. County of Red Willow, 149 Neb. 10, 30 N. W. 2d 51. See, also, Andersen v. Omaha & C. B. St. Ry. Co., 116 Neb. 487, 218 N. W. 135; Koehn v. City of Hastings, 114 Neb. 106, 206 N. W. 19; Stephenson v. De Luxe Parts Co., 133 Neb. 749, 277 N. W. 44; Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439; Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757; 38 Am. Jur., Negligence, § 348, p. 1052; Novak v. Laptad, 152 Neb. 87, 40 N. W. 2d 331.

In view of the evidence, we conclude there was no evidence of contributory negligence on the part of the plaintiff that warranted submission of this issue to the jury by the trial court, and in this respect the trial court committed prejudicial error. It also follows that the instruction on comparative negligence should not have been given, and it was error to give this instruction under the circumstances.

Other assignments of error need not be determined.

We reverse the judgment and remand the cause for new trial.

REVERSED AND REMANDED.