ROBERT M. FRASIER, APPELLANT, V. A. D. GILCHRIST ET AL., APPELLEES.

86 N. W. 2d 65

Filed November 15, 1957. No. 34241.

*Morrison, Lyons & Starrett,* for appellant.

*Russell & Colfer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Hitchcock County. It involves a tort action brought by Robert M. Frasier whereby he seeks to recover dam-

ages from Arnold D. Gilchrist and Larry D. Gilchrist because of personal injuries suffered in an accident which he claims was caused by negligent acts of the defendant Larry D. Gilchrist. Issues were joined, including the defense of contributory negligence, and the cause was tried to a jury. The jury found for defendants. Thereupon plaintiff filed a motion for new trial and has appealed from the overruling thereof.

The accident in which appellant was injured happened on Thursday, August 4, 1955, about 7:15 p.m. at a point on U. S. Highway No. 6 in Hitchcock County which is a short distance east of Beverly, Nebraska, and about 50 to 100 feet west of a bridge located on said highway.

In the summer of 1955 appellee Arnold D. Gilchrist, his wife Frances, and their son, appellee Larry D. Gilchrist, who was then 19 years of age, were engaged in the business of custom combining wheat with an International self-propelled combine. The Gilchrists lived on a farm near Kingman, Kansas. They used a 2-ton Ford Cabover truck and a ¾-ton Dodge pickup truck to haul the combine from one place to another. They completed their summer's work on the farm of Mr. Peterson near Gurley, Nebraska, and thereupon prepared to take the combine back to their farm near Kingman. Appellee Arnold D. Gilchrist had returned to Kingman some 2 weeks prior thereto. In order to haul the combine the header or cutter bar was removed from the main part thereof, and placed on a two-wheel trailer specially built for that purpose. The header bar was 15 feet 8 inches long and the trailer bed 16 feet long. The header bar was firmly fastened lengthwise on the bed of the trailer, being bolted and chained thereto. This trailer was attached to the Dodge pickup truck with a 2½ to 3-foot steel tongue fastened by a hitch to the rear thereof. However, the feeder housing extended out over the left side of the trailer, which had a 6½-foot wheel base. In fact, when the feeder bar was in place on the trailer it had an over-all width of more than 8

feet so a special permit was necessary to lawfully haul it over the public roads of Nebraska. Such a permit Frances Gilchrist obtained on August 3, 1955, from the proper authorities at Bridgeport, Nebraska. The main part of the combine was pulled on its own wheels by the Ford truck. The Gilchrists started for home on August 4, 1955. As they passed Beverly, Nebraska, going east, Frances Gilchrist was driving the Ford truck pulling the main part of the combine. She was in the lead. Following her at a distance of not over 300 feet was the Dodge pickup, being driven by appellee Larry D. Gilchrist. Riding with Larry was Wendell Keller, a young man who had been helping the Gilchrists and who was returning to his home. He was a neighbor and good friend of Larry D. Gilchrist.

On August 4, 1955, appellant was helping his friend, Kenneth Daniher, move the furniture of Daniher's mother from McCook to Palisade, Nebraska. The furniture was loaded on two pickup trucks, one a ¾-ton 1953 Chevrolet and the other a ½-ton 1955 Ford. They left McCook with these loaded pickup trucks sometime between 6:15 and 6:30 p.m. on that day, Daniher driving the Chevrolet and appellant the Ford. They proceeded on U. S. Highway No. 6 and as they approached Beverly, Nebraska, going west, the truck Daniher was driving was in the lead. It was some 2½ to 3 blocks ahead of the Ford.

The surface of the highway at the point involved was oil mat. It was 24 feet wide with a white line down the center thereof. The accident, which seriously and permanently injured appellant's left arm, resulted from the feeder housing, particularly a cast iron pulley located thereon, coming in contact with the left side of the Ford pickup truck appellant was driving. At the time of the accident the surface of the highway was dry and visibility good although the sun had either set or gone behind some clouds. At the place where the accident occurred the highway was straight and level al-

though, at a point about ⅜ of a mile east of the bridge, there was an S curve and a slight rise in the highway caused by a knoll.

Appellant contends the trial court erred by giving instructions Nos. 2, 9, and 12. Instruction No. 9 relates to the defense of contributory negligence whereas instruction No. 12 relates to the special permit already referred to. Appellant contends it was error to submit to the jury the specifications of negligence set out in instruction No. 9 because they find no support in the evidence. Reference is also made to instruction No. 2 which submitted the issues raised by the pleadings of the appellees and included the defense of contributory negligence. Of course the correctness of instruction No. 2, as to the issue of contributory negligence, would depend upon whether or not instruction No. 9 was proper. Instruction No. 9, insofar as here material, provides:

"In this case the defendants contend that the proximate cause of the collision, causing the injuries and damages to the plaintiff, if any, was due to negligence on the part of the plaintiff in one or more of the following particulars:

"(a)  That plaintiff failed to yield one-half of the main traveled portion of said highway to the pickup being operated by the defendant, Larry D. Gilchrist;

"(b)  That plaintiff was driving said Ford pickup to the left of the center of said highway at a place where the highway was wide enough to permit his driving on the right half;

"(c)  That plaintiff failed to keep a proper lookout for the vehicle being operated by Larry D. Gilchrist, and failed to turn to the right to avoid colliding with the header bar;

"(d)  That plaintiff operated his vehicle at a speed greater than was reasonable and proper with regard to the traffic, use and condition of the highway.

"While the burden of proof is upon the defendants to

establish the foregoing contentions of contributory negligence, you are instructed that this issue, as well as all other issues, must be determined by you from a careful consideration of all the evidence in the case."

It is stated in appellant's brief that: "There is absolutely no evidence in the record to sustain any of these allegations of contributory negligence and the submission of any one of them to the jury, constitutes reversible error." This requires a review of the evidence adduced subject to the following principles:

"It is the duty of the trial court, without request, to submit to and properly instruct the jury upon all the material issues presented by the pleadings and the evidence. This rule applies to the affirmative defense of contributory negligence." Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578. See, also, Harding v. Hoffman, 158 Neb. 86, 62 N. W. 2d 333.

"In determining the sufficiency of evidence to sustain a verdict it must be considered most favorably to the successful party, any controverted fact must be resolved in his favor, and he is entitled to the benefit of inferences reasonably deducible therefrom." Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749.

"Where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence, as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury." Pierson v. Jensen, 150 Neb. 86, 33 N. W. 2d 462.

The first and second specifications of negligence alleged by the appellees in their answer as being contributory to the accident and submitted to the jury by the court's instruction No. 9 are substantially identical and will be considered together.

Appellant testified that after he had crossed the bridge and while driving on his side of the road he saw the oncoming Dodge pickup truck pulling the trailer

head out into the center of the highway; that he then turned the pickup truck he was driving off the highway trying to avoid the oncoming truck and trailer, getting the right wheels thereof onto the shoulder of the road; that the trailer being pulled by the Dodge pickup black-snaked, the feeder housing thereon striking the side of the truck he was driving; and that the injury to his left arm resulted therefrom. The evidence of Kenneth Daniher and Virginia Frasier, appellant's wife, support what appellant testified to in this regard. However, appellee Larry D. Gilchrist testified he noticed the Ford pickup when it was on the bridge and that it was then "Pretty close to the center"; that as it passed it was "awful close"; that as he watched in his rear view mirror he saw a "bunch of dust from the combine"; that it hit and there was a thump; and that he was sure "they were on my side." Gilchrist also testified he found a large piece of the pulley that had been broken off by the impact, together with smaller pieces thereof, lying on the highway about a foot south of the center line. We think this evidence presented a jury question on this issue and it was therefore proper to submit it.

The third specification relates in part to the first two insofar as it claims the appellant "failed to turn to the right to avoid colliding with the header bar." The evidence we set out in relation to the first two specifications submitted would have application to the foregoing part of the third. However, the first part deals with the claim that appellant "failed to keep a proper lookout for the vehicle being operated by Larry D. Gilchrist." Appellant testified he saw the Dodge pickup truck and trailer as he approached the bridge when it was approximately a block and a half, or more, west thereof; that he had no trouble seeing it; that he did not notice the feeder housing although he noticed there was something on the trailer; and that he did not notice a flag on the feeder housing, although he admits that "If I had my attention directed on a red flag I probably would have

seen it if it was there." Appellee Larry D. Gilchrist testified there were three red flags on the trailer, one at each end and one on the feeder housing, the latter being fastened to the pulley by a wire. In view of this evidence we think the question of whether or not the appellant maintained a proper lookout was a question for the jury.

The fourth specification submitted the issue as to whether or not appellant operated his vehicle at a speed greater than was reasonable and proper with regard to the traffic, use, and condition of the highway.

As stated in Novak v. Laptad, 152 Neb. 87, 40 N. W. 2d 331, quoting from Folken v. Petersen, 140 Neb. 800, 1 N. W. 2d 916: " '* * * the lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing.' "

We have already referred to the highway, its construction, and condition. There were no traffic conditions involved and visibility was good. The only evidence as to speed was that appellant was going 40 to 45 miles an hour. This was not in violation of the maximum then permitted. It is true that Frances Gilchrist testified the pickups were coming at a high rate of speed as they approached her and described their passing the Ford truck she was driving "as a zip zip." But this testimony is not evidentiary of the actual speed the Ford pickup was traveling. We have searched the record for evidence to support this specification but find none. We think the trial court was in error in doing so and that the appellant was prejudiced thereby. As stated in Novak v. Laptad, *supra:* " 'The mere fact that contributory negligence may be pleaded as a defense does not justify the submission of that issue to the jury where there is no evidence to support it.

" 'Ordinarily, contributory negligence is a question for the jury; but, where there is no basis in the evidence

for a finding of contributory negligence, it is error to instruct on the subject and thereby to submit to the jury an issue which is outside the evidence.' Hartford Fire Ins. Co. v. County of Red Willow, 149 Neb. 10, 30 N. W. 2d 51." See, also, Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439.

In their answer appellees alleged that they "had procured a permit from the State of Nebraska allowing them to operate on the highways of said state a vehicle more than eight feet in width, which permit was valid and effective." This was in answer to appellant's alleged specification of negligence "That the defendant, Larry D. Gilchrist, was operating and driving said motor vehicle knowing that the same was more than 8 feet in width and in violation of the laws of the State of Nebraska." The effect of appellant's reply was to deny that appellees had procured a permit. At the trial appellees introduced, without objection, a "Special Single Trip Permit for the Movement of a Grain Combine," movement thereof to begin on August 4, 1955, and over several highways, including No. 6. As hereinbefore stated the trailer, when loaded with the header or cutter bar of the combine, was more than 8 feet in width.

Section 39-719, R. R. S. 1943, provides: "No vehicle shall exceed a total outside width, including any load thereon, of eight feet, except vehicles now in operation, which by reason of the substitution of pneumatic tires for other types of tires exceed the above limit."

However, section 39-721, R. S. Supp., 1955, pursuant to which this permit was issued, provides, insofar as here material that: "* * * the Department of Roads and Irrigation may issue a special permit in writing for a period not to exceed ten days for the moving over the highways of the state of vehicles, combination of vehicles, or other objects, which must of necessity be moved over the highways to reach their intended destinations, such vehicles or objects exceeding the

limitations provided herein and provided in any other statute of this state relating to height, width, length, and weight. The Department of Roads and Irrigation may impose such conditions and regulations for each such permit as may be necessary, * * *." The permit issued imposed numerous conditions as a basis for its lawful use.

In regard to this issue the trial court, by its instruction No. 12, advised the jury that "if you find that the defendants have established by a preponderance of the evidence that at the time involved herein the Department of Roads and Irrigation had issued a special permit for moving the combine belonging to the defendant, A. D. Gilchrist, then if you so find, it was not unlawful to operate a trailer conveying such combine or a part thereof, even tho you may find that the outside width of such trailer including its load exceeded eight feet." There is ample evidence in the record to sustain such a finding by the jury.

In regard thereto appellant contends it was error for the trial court to instruct the jury that it is not unlawful to operate an over-width vehicle upon a highway if the Department of Roads and Irrigation issues a permit therefor, where the permit shows on its face that it is subject to certain conditions and requirements imposed by the Department of Roads and Irrigation under statutory authority. It is not contended that the reception of the special permit was in error, but that the court erroneously permitted the jury to find the effect thereof by its instruction No. 12. It should be understood there is evidence other than the special permit itself to show what was done to obtain it and the purpose for which it was obtained. The evidence adduced shows, without dispute, that Frances Gilchrist applied for and received the special permit introduced for the purpose of moving the Gilchrists' combine from Gurley, Nebraska, to the Kansas line.

What appellant alleged in his petition as a basis for

recovery in regard to this issue we have hereinbefore set forth. It was general in its character and did not allege as a basis for recovery any failure on the part of appellees to comply with any of the specific provisions contained in the special permit, the performance of which was a prerequisite to its lawful use. If appellant wished to raise and have submitted as a basis for recovery the failure of the appellees to comply with any or all such provisions as were imposed by the Department of Roads and Irrigation relating to the lawful use of the special permit he should have specifically raised them. Under the general allegations as here made by appellant we think the trial court properly submitted the issue as to whether or not the Gilchrists were moving the combine, or any part thereof, in violation of the laws of Nebraska.

In view of what we have said herein we find the judgment of the district court overruling appellant's motion for a new trial was in error and the motion should have been sustained. We therefore set aside the district court's judgment so doing with directions that it enter an order granting appellant a new trial.

REVERSED AND REMANDED.

YEAGER, J., participating on briefs.