MARY JAROSH, APPELLEE, v. GEORGE VAN METER ET AL.,
APPELLANTS.

105 N. W. 2d 531

Filed October 21, 1960. No. 34783.

*Collins & Collins* and *Story, Pilcher, Howard & Hickman,* for appellants.

*Tesar & Tesar,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is a tort action which was originally brought in the district court for Douglas County by Mary Jarosh against George Van Meter, Frank Odorisio, and Richard Murray for the purpose of recovering damages she sustained by reason of injuries suffered in a car-pedestrian accident. Plaintiff recovered a verdict against all of the defendants and judgment was entered thereon. Defendants thereupon filed motions for either a new trial or for a judgment notwithstanding the verdict and have taken this appeal from the overruling thereof.

Appellants Frank Odorisio and Richard Murray contend the evidence adduced at the trial does not show that the panel truck, owned by Odorisio and double parked by his employee Murray, was a proximate cause of the accident and that they are therefore entitled to a judgment notwithstanding the verdict. Appellant George Van Meter contends that the evidence adduced at the trial shows appellee was, as a matter of law, guilty of contributory negligence to a degree that, under the comparative negligence doctrine, it defeats any right she might otherwise have to recover against him and that, by reason thereof, he is entitled to a judgment notwithstanding the verdict. In determining these contentions the following principles are applicable:

"In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Hickman v. Parks Constr. Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040.

"Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination." Thomas v. Owens, 169 Neb. 369, 99 N. W. 2d 605.

"A motion for a directed verdict or for a judgment notwithstanding the verdict admits, for the purposes of a decision of the motion, the truth of the material and relevant evidence on behalf of the party against whom the motion is directed, and he is entitled to have each controverted fact found in his favor and have the benefit of fair inferences deducible from the evidence." Spracklin v. Omaha Transit Co., 162 Neb. 351, 76 N. W. 2d 234.

"In a case where a motion has been made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case was submitted to a jury which returned a verdict contrary to the motion, and a motion for judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict." Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144.

The accident, in which appellee was injured, happened about 3:15 p.m., on December 20, 1957, at a point on South Tenth Street, which is in the city of Omaha, just west of the entrance of Saint Josephs Hospital. Saint Josephs Hospital is located along the east side of

South Tenth Street between Castelar and Martha Streets. In front of the hospital, and along the east curb of South Tenth Street, is an area 95 feet long wherein buses and cabs may stop at the curb to load and unload passengers. It is designated as being for that purpose by signs at each end of the area and by the curb being painted yellow. South Tenth Street, from curb to curb, is 40 feet wide and surfaced with asphalt. It had a white line painted down the center thereof. Martha Street joins South Tenth Street from the west and forms a T intersection. The intersection is about 40 to 50 feet north of where the accident happened. Castelar Street is the first east-west intersecting street to the south of the place where the accident happened. The evidence shows that South Tenth Street is heavily traveled by vehicles and it is also frequently crossed by pedestrians going to and from the hospital. However, the place where appellee attempted to cross was neither an intersection nor a marked crosswalk; in fact, it was in an area located between intersections.

On the day involved appellee, who lives at 2315 South Eleventh Street, had gone to a grocery store on South Tenth Street to buy groceries. After doing so she boarded a bus, northbound on South Tenth Street, to return home. As was her custom she alighted from the bus, after it had stopped in front of the hospital, and waited for it to travel on north before proceeding west across South Tenth Street. As she stood there waiting for the bus to go on to the north she looked both to the north and south to see if any traffic was approaching thereon from either direction in order to determine if it was safe for her to cross. At this time she noticed a panel truck to her left or south was double parked on the east side of South Tenth Street or in the lane for vehicles traveling thereon to the north. This was the truck owned by appellant Odorisio and being driven by his employee appellant Murray. It appears there was a car parked at the curb and that Murray, in the course

of his duties as an employee of appellant Odorisio, double parked the panel truck alongside of this car, parallel thereto and about 1½ feet therefrom.

After the bus had gone on north and after she had looked to see if any traffic was coming from either the north or south on South Tenth Street, appellee proceeded to cross South Tenth Street toward the west at a point about 12 to 15 feet north of the parked panel truck. At about the time this was happening appellant Van Meter was approaching South Tenth Street on Castelar Street driving his 1954 Hudson sedan. At South Tenth Street he stopped at a stop sign and while so stopped he observed the panel truck double parked in the driving lane for northbound traffic. After doing so Van Meter entered the intersection and drove north on South Tenth Street in the driving lane for northbound traffic. As he approached the parked truck he turned to the left to pass it, there being no other traffic from either the north or south at the time.

As he turned to the left to pass the parked truck the left wheels of his car went across the center line of South Tenth Street some 18 inches because the parked truck did not leave him sufficient room to pass it without doing so, its west side being within 6 or 7 feet of the center line of South Tenth Street. Appellant Van Meter could not see through the panel truck because of the nature of its construction, so he was not able to see what was on South Tenth Street in front of it until his car was abreast of it. When it was he saw appellee in the street some 12 or 15 feet ahead of the truck and about 2 feet west of the west side thereof, if extended north. He testified he immediately applied his brakes, which skidded his front tires some 15 feet; that he hit appellee and knocked her to the pavement; that he hit her with his car just to the left of the center of the front end thereof and at a point in the street some 3 feet east of the center thereof; and that he traveled about 4 feet after doing so. Appellee testified she continued to look

both to the north and south as she crossed South Tenth Street but saw no traffic coming thereon from either direction; and that she was looking west when she was hit, which was just to the west of the center thereof, but never saw the car of appellant Van Meter before it hit her.

There is really no dispute in the record except that relating to the point where appellee says she was hit. Appellee testified it was to the west of the center line of South Tenth Street while Van Meter testified it was about 3 feet east thereof.

We shall first consider the contention of appellants. It is, of course, the duty of the trial court to submit to the jury all material issues presented by the pleadings which find support in the evidence adduced. See, Frasier v. Gilchrist, 165 Neb. 450, 86 N. W. 2d 65; Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758; Bell v. Crook, 168 Neb. 685, 97 N. W. 2d 352.

. "Negligence is the doing of something which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do something which an ordinarily prudent person would have done under the same or similar circumstances." Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710.

Appellant Murray, by double parking the panel truck of appellant Odorisio, violated certain ordinances of the city of Omaha relating to the use of its streets by vehicles being operated thereon. We have held that such violation is evidence of negligence which a jury is entitled to consider upon the question of whether actionable negligence exists. See, Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N. W. 2d 680; Stark v. Turner, 154 Neb. 268, 47 N. W. 2d 569; Hersh v. Miller, 169 Neb. 517, 99 N. W. 2d 878. And, in this respect, where separate independent acts of negligence by different persons combine to produce a single injury, each participant is liable for the resulting damages though the act of one of them alone might not have caused the injury. See, McClelland v.

Interstate Transit Lines, 142 Neb. 439, 6 N. W. 2d 384; Shupe v. County of Antelope, *supra*.

However, to be actionable, such negligence must have been a or the proximate cause of the injuries for which damages are sought to be recovered. Frerichs v. Eastern Nebraska Public Power Dist., 154 Neb. 777, 49 N. W. 2d 619. "Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred." Shupe v. County of Antelope, *supra*. As stated in Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117: "It is not sufficient that the negligence charged furnishes only a condition by which the injury is made possible, for if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury." However, as stated in Paup v. American Telephone & Telegraph Co., 124 Neb. 550, 247 N. W. 411: "A tort-feasor is answerable for all the consequences that, in the natural course of events, flow from his unlawful or negligent acts, although those results are brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrong-doer, or were the natural consequences of his original wrongful act." In Frerichs v. Eastern Nebraska Public Power Dist., *supra*, we said: "In distinguishing between proximate cause and condition this court said in Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117: 'To constitute proximate cause, under authority of the adjudicated cases, the injury must be the natural and probable result of the negligence, and be of such a character as an ordinarily prudent person could have known, or would or ought to have foreseen might probably occur as the result. It is not sufficient that the negligence charged does nothing more than furnish a condition by which the injury

is made possible, and if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury.' " As we said in Shupe v. County of Antelope, *supra,* by quoting from Rulane Gas Co. v. Montgomery Ward & Co., 231 N. C. 270, 56 S. E. 2d 689: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." Therein we also said, by quoting from Cooley on Torts, § 52, p. 133: "But if the acts or neglects were not concurrent in time, and the party last in fault was chargeable with some duty to the other which, if performed, would have prevented the injury, the law will attribute to his culpable conduct the injurious consequence, and refuse to look beyond it."

"Ordinarily, where the negligence of one party is merely passive and potential causing only a condition while that of the other is the moving and effective cause of the accident, the latter is the proximate cause." Ecker v. Union P. R. R. Co., 164 Neb. 744, 83 N. W. 2d 551. See, also, Hersh v. Miller, *supra.*

Appellee was fully aware of the parked panel truck before she left the east side of South Tenth Street to cross while appellant Van Meter had become aware of its being parked where it was even before he entered South Tenth Street. Under these circumstances, with the parties being fully aware of the parked panel truck and there being, at the time, no other traffic on South Tenth Street to interfere with their use thereof or to divert their attention, we think the parked truck merely created a condition of which the acting parties were fully aware and in no way was it a proximate cause of the accident in which appellee was injured.

Other jurisdictions, under comparable situations, have come to the same conclusion. See, Geisen v. Luce, 185 Minn. 479, 242 N. W. 8; Powers v. Standard Oil Co., 98 N. J. L. 730, 119 A. 273; DeLuca v. Manchester Laundry & Dry Cleaning Co., Inc., 380 Pa. 484, 112 A.. 2d 372; Baker v. Cities Service Oil Co., 321 Ill. App. 142, 52 N. E. 2d 284. As stated in Powers v. Standard Oil Co., *supra*: "In such a situation cause necessarily comprehends an efficient operating force or situation, by intervention or otherwise, without which the accident could not have happened. In this situation the truck was an immobile, inactive instrumentality, incapable in its inactive condition of perpetrating harm or damage. The fact that its reversed situation made its position upon the street at that point a violation of the Traffic law, did not confer upon the truck either activity or force, so as to constitute it an active efficient instrumentality for harm. Its violation of the Traffic law created simply a superadded visible condition upon the street, which was perfectly obvious to the wayfarer, and imposed upon him or her, as a consequence, the necessity for corresponding care or precaution in the use of the highway. For the patent violation of the Traffic law the remedy rested with the constituted municipal authorities, but its actual existence as an obvious fact to be reckoned with could not be ignored by the traveling public, and did not exempt the wayfarer from the exercise of the legal duty of due care under the existing conditions."

Under the circumstances herein disclosed by the evidence adduced we do not think there is any evidence upon which a jury could base a finding to the effect that the parked panel truck was a proximate cause of the accident and, in view thereof, appellants Odorisio and Murray were entitled to have their motion for a directed verdict, based on that contention, sustained and are now entitled to have their motion for judgment notwithstanding the verdict sustained.

We come then to appellant Van Meter's contention

that the trial court should have sustained his motion for a directed verdict because appellee was guilty, as a matter of law, of contributory negligence sufficient, under the comparative negligence doctrine, to defeat any right she might otherwise have to recover against him.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." Corbitt v. Omaha Transit Co., *supra.*

We have said that when a pedestrian crosses the street at an intersection, and the same would be true at a marked crosswalk, that: "On reaching the intersection, he would look both to his right and to his left. Seeing that no cars were coming from the right that would endanger him before reaching the center of the street and determining that he could safely cross in front of cars coming from his left, he would proceed, being watchful of the cars whose traffic lanes he was crossing. Arriving in the center of the street, he would devote the greater part of his attention to cars coming from the south (right) whose traffic lanes he would cross in reaching the other side of the street, being alert, however, at all times, to the possibility that a car might appear where normally it would not be expected." Belville v. Bondesson, 130 Neb. 926, 266 N. W. 901. However, as stated in Doan v. Hoppe, 133 Neb. 767, 277 N. W. 64: "A pedestrian crossing a street at a place other than a street intersection or crosswalk in direct violation of a city ordinance is required to keep a constant lookout for his own safety in all directions of anticipated danger." Therein we went on to hold that: "We have come to the conclusion that one who crosses a street between intersections, contrary to the provisions of a city ordinance, is required

to keep a constant lookout for his own safety, and if he fails to so do he is guilty of contributory negligence as a matter of law." See, also, Trumbley v. Moore, 151 Neb. 780, 39 N. W. 2d 613; Wilson v. Wiggins, 155 Neb. 382, 52 N. W. 2d 248.

"While the driver of an automobile across intersections where there are no traffic signals is charged with notice that a pedestrian has the right of way, and is required to accord such to the pedestrian, yet as between intersections the automobile has the right of way and the driver has a right to assume that pedestrians will observe this rule. He is not required to anticipate that a pedestrian will violate the rule." Doan v. Hoppe, *supra.*

Here the evidence shows appellee violated certain ordinances of the city of Omaha by crossing South Tenth Street where she did. However, as stated in Doan v. Hoppe, *supra:* "This court has held many times that the violation of a statute or an ordinance regulating traffic does not constitute negligence as a matter of law but is evidence of negligence to be considered by the jury in connection with other circumstances in evidence. The mere fact that a pedestrian walks across a street between intersections contrary to ordinance is not of itself negligence. But, one who does so must necessarily be required to exercise a greater degree of care than one who walks across a street at a crosswalk where protection is afforded by giving the pedestrian the right of way." See, also, Trumbley v. Moore, *supra.*

Here the evidence shows appellee was crossing South Tenth Street from east to west at a point between intersections and not where it was marked as a crosswalk. She testified she could not see to the south when she first left the east side of the street, although she looked, because of the parked panel truck which she observed; that she could see to the north but no traffic was coming from that direction, although South

Tenth Street, at this location, is normally heavily traveled by vehicles and also frequently crossed by pedestrians going to and from the hospital; that she continued to look both north and south and did so at a point where she could see past the parked panel truck but saw no traffic coming from either direction; that she then continued on west across the street and was hit by appellant Van Meter's car after she had crossed the center line, not having seen the car before it hit her; and that she was looking west at the time she was hit. Appellant Van Meter testified that after he had turned his car to the left to pass the parked panel truck he could not see ahead of the truck before he came abreast of it because of the nature of the truck's construction; that when he came abreast of the truck he saw appellee going west across South Tenth Street some 12 or 15 feet ahead of the truck; that when he saw her she was some 2 or 3 feet west of a line extended north from the west side of the parked truck; that he immediately applied his brakes and slid his front tires, which left tracks on the pavement for a distance of 15 feet; that he could not avoid hitting appellee; that he hit her with the front of his car when she was some 3 feet east of the center line of South Tenth Street; and that his car traveled forward a distance of 4 feet after hitting her.

The only dispute in the evidence relates to where appellee was with reference to the center line of South Tenth Street when she was hit. There is no evidence that appellant Van Meter's car was being driven at an unreasonable rate of speed under the circumstances. In fact, the evidence adduced would indicate he was traveling at a reasonable rate of speed. There was no other traffic on South Tenth Street at the time to divert the attention of either appellee or appellant Van Meter. Appellee testifies that when she got to where she could look past the parked truck to the south that she did so but saw no car approaching from that di-

rection. Under the undisputed evidence adduced appellant Van Meter's car had then turned out to pass the parked truck and had to be in plain sight. Appellee cannot excuse her failure to see this car approaching from the south merely by saying she looked and did not see it. She was duty bound to look and see what was in plain sight. Her failure to do so and then stepping out in front of the oncoming car at a time and place when the driver thereof could not avoid hitting her was contributory negligence of such a degree that it defeated, as a matter of law, any right she might otherwise have against appellant Van Meter. In view thereof, appellant Van Meter's motion for a directed verdict, based thereon, should have been sustained and he is now, by reason thereof, entitled to have his motion for a judgment notwithstanding the verdict sustained.

Appellants raise two contentions relating to their motions for new trial which have merit. However, in view of what we have herein said and held it would serve no useful purpose to discuss them. We reverse the judgment of the trial court and remand this cause to it with directions to enter a judgment for the appellants in accordance with our opinion, taxing all costs to appellee.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.