Bradley DUNCAN, a minor, by and through his Father and Next Friend, Dale L. Duncan, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. Civ. 02431.

United States District Court,
D. Nebraska.

July 12, 1971.

———◆———

John J. Higgins, Jr., Omaha, Neb., for plaintiff.

Richard Dier, U. S. Atty., and William Tighe, Asst. U. S. Atty. for the D. of Nebraska, for defendant.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court after its trial to this Court. Briefs have been submitted by both parties and the Court is now prepared to announce its findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

Jurisdiction exists under 28 U.S.C.A. § 1346, more commonly known as the Federal Tort Claims Act. This action was brought on behalf of Bradley Duncan by his Father and Next Friend, Dale L. Duncan, hereinafter reference to plaintiff is to Bradley Duncan.

At the time of the unfortunate incident that gave rise to this action, the plaintiff, Bradley Duncan, was eight years old and resided with his parents and family in the Capehart Housing Addition at Offutt Air Force Base, Nebraska. The plaintiff's father was at that time a Master Sergeant in the Air Force and pursuant to Air Force Regulations was to receive adequate and livable housing from the Air Force in lieu of a housing allowance.

On November 1, 1964, the plaintiff was a guest in the home of a Sergeant J. E. Fahrer. Plaintiff was engaging in a game of "hide and seek" or "spookhouse" with three of the Fahrer children, the oldest being nine years of age. The plaintiff testified that, "We were playing, like I was the monster, and they were hiding from me." [Tr. 22]. The lights were off in the room the children were playing in, but a hall light was on.

The closets in the room were folding or bi-fold closet doors. On each door there was an aligner which fit the aligner on the opposite folding door. [Ex. 1–5]. The plaintiff looked inside the closet and at that time one of the other children hit or pushed the closet door and a metal closet aligner struck the plaintiff in the left eye. The injury has for all practical purposes blinded the plaintiff in this eye.

It was stipulated by the parties that the bottom part of the floor and the top-most part of the aligner was 3 feet 9½ inches from the floor and the top-most part of the aligner was 3 feet 11 inches from the floor. The manufacturer of the closet doors, Superior Woodwork Company of San Antonio, Texas provided in the installation instructions that the aligners be located one inch from the base of the closet door. [Ex. 24]. The government apparently deviated from the manufacturer's specification to increase the stability and utilization of the bi-fold doors. Several local builders testified that the placement of the central aligners prevents warping and makes for a better fit, and adds stabilization to the folding doors. [Tr. 152, 162, 170, 177, 182].

■■ The plaintiff urges that liability exists on the government because it was under an affirmative duty to provide and maintain the facilities in which this injury occurred [Air Force Regulation 85–1] and that the deviation from the manufacturer's instructions constitutes a breach of this duty and an act of negligence. Defendant argues that the government acted in a reasonable manner when for a useful purpose it placed the aligners at the height stipulated to and that such conduct cannot constitute actionable negligence.

At the conclusion of the trial of this matter to the Court I informed counsel that I wanted their briefs directed to the issue of what possible actionable negligence there could have been on the part of the government. I will address myself to this question.

The rule in Nebraska in respect to this case is that "where separate independent acts of negligence by different persons combined to produce a single injury, each participant is liable for the resulting damage though the act of one of them alone might not have caused the injury." Accordingly, if there was any negligence whatsoever on the part of the defendant that contributed to this accident in question there would be liability on the part of the government.

In Schneider v. Chrysler Motors Corporation, 401 F.2d 549 [8th Cir. 1968], the Eighth Circuit reviewed a finding by this Court that a verdict returned by a jury against Chrysler Motors would have to be set aside, because as a matter of law there could be no liability on the part of the defendants. Pittsburgh Plate Glass was also a named defendant. In that case the plaintiff had seriously injured his eye when, while in his garage, he looked into his 1960 Valiant automobile to see if his car keys were in the ignition. The garage was dark and the plaintiff struck his eye on the apex of the left front window vent. Said window vent was projected outward about 55–70 degrees and this was the basis of the asserted negligence. The Eighth Circuit in affirming the judgment of this Court said:

"In the case at bar, the Valiant automobile was not being used for the purpose intended, and the left wing vent window, even if we assume that it has a microscopic cutting surface, did not present an unreasonable risk of harm.[10] While it might not be incorrect to say that 'but for' the cutting surface on the left wing vent window Schneider would not have sustained a lacerated eyeball, such a statement does not serve to fix legal liability for Schneider's unfortunate accident on the manufacturer; it is overstraining a manufacturer's duty to foresee that individuals would inadvertently allow their eye to come into contact with the glass edge of a wing vent window on a parked automobile. A manufacturer is not an insurer and

cannot be held to a standard of duty of guarding against all possible types of accidents and injuries. Standards of design and manufacturing skill must be consonant with the stage of the art and the risks to be avoided must be foreseeable."

That Court then went on and quoted approvingly from a California case similar to the action here under consideration. The Eighth Circuit observed:

"Defendants, as did the District Court regard Hatch v. Ford Motor Company, 163 Cal.App.2d 393, 329 P.2d 605 as in point. In Hatch, the Court held no duty was owed a 6-year old child who walked into the radiator ornament of a parked automobile, the ornament piercing his eyeball and causing loss of the eye. The Court held as a matter of law that the risk of plaintiff's injury was not one which the defendant was required to anticipate or to protect against.

"The Court in Hatch reasoned at 607–608 at 329 P.2d: 'If in the present case, the minor plaintiff had stumbled as he approached the vehicle and struck his face against a headlight lens causing it to fracture and lacerate his eye, the question of duty to make the vehicle safe to collide with would be clearly presented under a claim that if the headlight lens had been made of safety glass the plaintiff would not have lost his eye; or, if the plaintiff had collided with the side of the car and his eye been impaled upon a radio antenna which had been telescoped so that its point protruded but a few inches above the body of the car, again the claim might be made that this created a danger which might have been avoided by enclosing the radio antenna within the body of the car so as not to protrude therefrom. In other words, each case in which a person collided with a standing vehicle and received some injury from a part of the vehicle which injury he might not have sustained had the vehicle been constructed in some

other manner would raise a question of fact as to whether the manufacturer was liable to that person. In effect the triers of the facts would be the arbiters of the design of automobiles and the standard of design would be determined not when the automobile was manufactured but after the occurrence of an accident.'

"The accident in Hatch appears much more foreseeable than the one in the case at bar and raises a close question on the use of a needlessly protruding ornament as distinguished from an essential protrusion of an opened vent window."

In Johnson v. Municipal University of Omaha, 187 Neb. 24, 187 N.W.2d 102 [1971], the Supreme Court for the State of Nebraska had before it a claim brought against University of Omaha for alleged negligence for the maintenance of a wooden box to support uprights used in pole vaulting. After reviewing the usefulness of the boxes the Court affirmed a judgment directed against the plaintiff and in so doing stated:

"Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and there is negligence if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done. Restatement Torts 2D s. 291, p. 54."

There the usefulness of the boxes was considered in light of the safety factors and the act was found to be a non-negligent one. Here I have not found another case nor has one been called to my attention where such aligners have caused an injury. The testimony was uncontested that such positioning of door aligners was a customary, appropriate and useful construction practice for the use on a bi-fold door covering a closet. The unfortunate accident that resulted was completely unforeseeable and the evidence adduced at trial in my opinion failed to raise an issue of negligence.

Like the Supreme Court of Nebraska in *Johnson*, the Eighth Circuit in *Schneider* and the California Court of Appeals in *Hatch*, I have concluded that here the risk of placing the aligners midway on the bi-fold doors was not unreasonable and cannot legally constitute negligence.

I have further concluded as alternative ground for nonliability that the act of the government in placing the aligners halfway up the door cannot be considered as the proximate cause of the accident here in question.

In a case remarkably similar to this action, Morril v. Morril, 104 N.J.Law 557, 142 A. 337 [1928] a 13-year old boy lost his eye while visiting a relative. The youngster had been playing catch football with several boys in the backyard of his aunt's home when a door of the garage was blown open by the wind and "a bent, defective latch hit him in the eye, resulting in the loss of the eye." The court in that action used language which I find equally applicable here. The court said:

"But the doctrine of proximate cause also intervenes to prevent a remedy in this instance. We have a closed door with a damaged latch, which is opened through no agency of the defendant, but is either blown open by a violent wind, equivalent to vis major, or is opened by the intervention of the boys at play in the yard. In either event the cause is not proximate so as to subject defendant to liability as the physical agency which actively or possibly set the injurious instrumentality in motion, or created the condition which superinduced the injury."

Here too I have also concluded that the Government's action in placing the aligners where it did was not the proximate cause of the injuries suffered by the plaintiff. The placement of the aligners on the bi-fold door was nothing more than a mere condition which required the super-added extraneous cause of the slamming of said door by a third agency. If the aligners had been placed where the manufacturer suggested, that is one inch from the floor, it would have been possible for one of the boys to have been laying on the floor when the bi-fold door was slammed shut. It is just as likely in such a case that a serious injury would have resulted as in the present action.

In Leistra v. Bucys Erie [D.C.Neb. Civ. No.02790] this Court reached a similar conclusion in holding that a crane manufacturer could not be held negligent for injuries sustained by a construction worker who attempted to dislodge a wedged cable on the crane. Therein this writer stated:

"The problem that is bothersome to the Court is the matter of causation, whether it be termed as a duty owed, proximate cause, foreseeability or a superseding intervening cause. Choosing first to speak mainly in terms of a superseding intervening cause, the Court believes, and so holds, that some conduct by either the plaintiff, other employees, or his employer, or a combination thereof, superseded any pre-existing negligence on the part of the defendant thereby relieving defendant of liability.

"Under Nebraska law which governs this lawsuit, '[o]rdinarily, where the negligence of one party is merely passive and potential causing only a condition while that of the other is the moving and effective cause of the accident, the latter is the proximate cause.' Varosh [Jarosh] v. Van Meter, 171 Neb. 61, 105 N.W.2d 531 [1960]."

Here I hold that the placing of the aligners midway on the bi-fold was only a condition and cannot as such constitute the proximate cause of the accident here in question.

Accordingly, I have concluded that no case of negligence was made out against the Government and that the action of the Government in placing the aligners where it did was not the proximate cause of the injury sustained by the plaintiff.

The foregoing constitutes findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

An Order in accordance with the findings made herein will be entered this same date.